**FOR PUBLICATION**



FILED

Apr 17 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES WESTMORELAND, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1107-CR-356 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

INTERLOCUTORY APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Jose D. Salinas, Judge
Cause No. 49G14-1012-CM-090092

**April 17, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Charles Westmoreland was a passenger in a vehicle that police stopped for a routine traffic violation. After a police officer determined that there were outstanding warrants for the driver, the officer arrested the driver while another officer removed Westmoreland from the car, handcuffed him, and patted him down for officer safety, finding a baggie of marijuana in his front pocket. Westmoreland now appeals the trial court's denial of his motion to suppress the marijuana, arguing that the pat down was illegal because the officers did not reasonably believe that he was armed and dangerous. In light of the United States Supreme Court's opinion in *Arizona v. Johnson*, 555 U.S. 323 (2009), which considered the authority of police officers to pat down vehicle passengers during a routine traffic stop, we conclude that the trial court erred in denying Westmoreland's motion to suppress the marijuana because the officers did not reasonably believe that he was armed and dangerous.

**Facts and Procedural History**

Around 6:00 or 7:00 p.m. on December 1, 2010, Indianapolis Metropolitan Police Department Officer Robert Hicks was patrolling the southside of Indianapolis. He observed a vehicle driven by Deborah Day commit traffic infractions, including failure to signal, and initiated a traffic stop. Officer Hicks approached the driver side of the vehicle and asked Deborah for her driver's license and registration. Deborah gave Officer Hicks an Indiana identification card. Upon running the card, Officer Hicks learned that Deborah had warrants out of both Marion and Johnson counties. Accordingly, Officer

Hicks called for assistance and then "pulled [Deborah] out of the car, placed handcuffs on her, [and] placed her [i]n the back seat of [his] vehicle." Tr. p. 7.

Westmoreland was the sole passenger in Deborah's vehicle, and Officer Hicks also obtained his identification. Westmoreland did not have any outstanding warrants. About this same time, a second officer, Officer Ethan Forrest, arrived on the scene. Officer Hicks told Officer Forrest that he "had a wanted person [Deborah] and asked him if he would pull the passenger out of the vehicle" because he "was going to tow [it]." *Id.* at 8-9. Officer Forrest then removed Westmoreland from the vehicle and performed a pat down. Officer Forrest also placed Westmoreland in handcuffs, but he was not sure whether he did so before or after the pat down. Although Officer Forrest said that he performed a pat down "for officer safety issues," *id.* at 13, he did not observe "any furtive movements" from Westmoreland, *id.* at 14. During the pat down, Officer Forrest found a "plastic baggie with marijuana substance inside of it, in [Westmoreland's] front pocket." *Id.* at 13. Officer Forrest explained that a "corner piece" of the baggie, which revealed marijuana residue, was "sticking out" of Westmoreland's front pocket. *Id.* Officer Forrest removed the baggie and gave it to Officer Hicks.

The following day, the State charged Westmoreland with Class A misdemeanor possession of marijuana. Westmoreland filed a motion to suppress the marijuana because the "search and seizure of Defendant's person, the bag within [D]efendant's pocket, and the marijuana within the bag, violated [his] rights under the 4th [A]mendment and [A]rticle 1 § 11." Appellant's App. p. 23. Following a hearing, the trial court denied Westmoreland's motion to suppress the marijuana. Tr. p. 24-28.

3

This discretionary interlocutory appeal now ensues.

## Discussion and Decision

Westmoreland contends that the trial court erred in denying his motion to suppress the marijuana. Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Jackson v. State*, 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), *trans. denied.* We determine whether substantial evidence of probative value exists to support the denial of the motion. *Id.* We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court's ruling. *Id.* However, the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id.* We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008).

Westmoreland specifically argues that his pat down was illegal under both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution because the officers did not reasonably believe that he was armed and dangerous.[1] Finding the federal constitutional argument dispositive, we address only that.

The Fourth Amendment provides:

---

[1] We note that Westmoreland does not challenge the initial traffic stop. Indeed, it is well settled that a police officer may stop a vehicle upon observing a minor traffic violation. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Unless one of several established exceptions applies, police officers must obtain a warrant based on probable cause before executing a search or a seizure. *State v. Hobbs*, 933 N.E.2d 1281, 1284 (Ind. 2010). One such exception was established in *Terry v. Ohio*, in which the United States Supreme Court held that a police officer may, with or without probable cause, briefly detain a person for investigatory purposes if, based on specific and articulable facts, the officer reasonably believes that criminal activity "may be afoot."[2] 392 U.S. 1, 30 (1968). In addition to detainment, *Terry* permits a police officer to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes that the individual is armed and dangerous. *Id.* A generalized suspicion that an individual presents a threat to an officer's safety is insufficient to authorize a pat-down search; rather, "there must exist articulable facts to support an officer's reasonable belief that the particular individual is armed and dangerous." *Patterson v. State*, 958 N.E.2d 478, 486 (Ind. Ct. App. 2011).

A unanimous United States Supreme Court has already addressed the issue before us, although neither party cites it, in *Arizona v. Johnson*, 555 U.S. 323 (2009). In

---

[2] We note that the State argues that a different exception applies, that is, the search-incident-to-arrest exception. Specifically, the State argues that Officer Forrest had probable cause to arrest Westmoreland for possession of marijuana because he saw a corner of a baggie with marijuana residue sticking out of Westmoreland's front pocket. However, because the evidence shows that Officer Forrest spotted the marijuana during the pat down and not before, we find no merit to this argument. *See* Tr. p. 13 (Officer Forrest testifying that he found a plastic baggie "when" he patted down Westmoreland), 19 (prosecutor stating at motion to suppress hearing that Officer Forrest saw the baggie "[d]uring" the pat down).

5

*Johnson*, the Supreme Court considered "the authority of police officers to 'stop and frisk' a passenger in a motor vehicle temporarily seized upon police detection of a traffic violation." *Id.* at 326. In arriving at an answer, the Supreme Court relied on three of its prior decisions.

First, the Supreme Court in *Johnson* cited *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). *Johnson*, 555 U.S. at 331. In *Mimms*, the Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." 434 U.S. at 111 n.6. The Supreme Court explained that the government's "legitimate and weighty" interest in officer safety outweighs the "*de minimis*" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Id.* at 110-11. The Supreme Court further held once a driver is outside the stopped vehicle, the driver may be patted down for weapons if the officer reasonably concludes that the driver "might be armed and presently dangerous." *Id.* at 112.

Second, the Supreme Court in *Johnson* cited *Maryland v. Wilson*, 519 U.S. 408 (1997). *Johnson*, 555 U.S. at 331. *Wilson* held that the *Mimms* rule applies to passengers as well as drivers. *Id.* Specifically, the Supreme Court instructed that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Wilson*, 519 U.S. at 415. The Supreme Court recognized that that "the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger." *Id.* at 413.

6

Finally, the Supreme Court in *Johnson* cited *Brendlin v. California*, 551 U.S. 249 (2007). *Johnson*, 555 U.S. at 332. In *Brendlin*, the Supreme Court observed that for the duration of a traffic stop, the officer effectively seizes "everyone in the vehicle, not just the driver." 551 U.S. at 255. That is, a passenger is seized, just like a driver, "from the moment [a car stopped by police comes] to a halt on the side of the road." *Id.* at 263.

Based on these three decisions, the Supreme Court in *Johnson* held that, in a traffic-stop setting,

> the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

555 U.S. at 327.

We now apply *Johnson* to this case.[3] Because Officer Hicks lawfully pulled over Deborah for a traffic violation, the officers did not need to have cause to believe that Westmoreland was involved in criminal activity. However, to justify the pat down of Westmoreland, which led to the discovery of marijuana, the officers must have had reasonable suspicion that he was armed and dangerous. But no evidence was presented at

---

[3] We note that the State advocates for a slightly different test. That is, the State argues that because the officers were going to tow the vehicle, a pat down was warranted. The State asserts that Westmoreland likely would have been mulling about the area during this process, which would have "place[d] the officers in possible danger and would reasonably heighten apprehension for their safety." Appellee's Br. p. 7. However, as noted above, the State did not cite *Johnson* on appeal. Because *Johnson* sets forth the applicable test, which plainly requires the officers to harbor reasonable suspicion that Westmoreland was armed and dangerous, we decline to apply the State's variation. In addition, because we ultimately find that the officers did not reasonably believe that Westmoreland was armed and dangerous, dangerousness would not automatically develop just because a car is towed.

7

the suppression hearing to support a reasonable belief that Westmoreland was armed and dangerous. Although Officer Forrest testified that he patted down Westmoreland for officer safety, Officer Forrest conceded that Westmoreland did not make any furtive movements. In addition, neither officer testified that Westmoreland was hostile, belligerent, or even uncooperative during the traffic stop. But most compelling is the State's concession on appeal that "Officer Forrest did not have any particularized articulable facts for believing that [Westmoreland] was armed and dangerous." Appellee's Br. p. 7. We therefore conclude that the officers did not have reasonable suspicion that Westmoreland was armed and dangerous. Because Officer Forrest performed an illegal pat down on Westmoreland, the trial court erred in denying his motion to suppress the marijuana found as a result of that pat down. And without this marijuana, there is simply no evidence to support the possession of marijuana charge against Westmoreland. We therefore reverse the trial court and remand with instructions for the court to dismiss Westmoreland's possession of marijuana charge.

Reversed and remanded.

ROBB, C.J., and NAJAM, J., concur.

8