## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

09/06/2017, 9:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James G. Tyler
Tell City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher A. Coyle, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | September 6, 2017 <br><br> Court of Appeals Case No. 62A04-1608-CR-1887 <br><br> Appeal from the Perry Circuit Court <br><br> The Honorable Lucy Goffinet, Judge <br><br> Trial Court Cause No. 62C01-1509-F5-548 |

**Altice, Judge.**

### Case Summary

[1] Christopher Coyle brings this interlocutory appeal challenging the trial court's denial of his motion to suppress evidence obtained during a search of his property. Coyle argues that the search violated the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[2] We affirm.

## Facts & Procedural History

[3] The Perry Circuit Court issued a felony arrest warrant for Chad Posey. Posey, however, had eluded law enforcement for several weeks. On September 15, 2015, the Perry Circuit Court issued a second felony arrest warrant for Posey. Two days later, U.S. Marshalls "pinged" Posey's cell phone to Coyle's property. *Transcript* at 34. After receiving this information, police officers from several different law enforcement agencies[1] went to Coyle's home in rural Cannelton to locate Posey. Three police vehicles pulled into Coyle's driveway and approached the front of the residence while other officers positioned themselves to approach on foot from the back of the property.

[4] As the officers turned into the driveway to Coyle's home, an officer in one of the cars observed Posey in Coyle's back yard near a shed. Posey jumped onto an ATV and immediately took off on a trail that led into the wooded area

---

[1] Agencies represented included U.S. Marshals, the Perry County Sheriff's Department, and the Tell City Police Department.

behind Coyle's home. That officer communicated his visual of Posey to the other officers on the scene.

[5] Corporal Marty Haughee of the Tell City Police Department was on foot, approaching Coyle's property from the back side through the wooded area. Corporal Haughee observed Posey on the ATV come into an open area near the home. When Posey saw Corporal Haughee, Posey turned around and headed back in the general direction of Coyle's home.

[6] Deputy Damion Marsh of the Perry County Sheriff's Department was one of the officers who approached from the front of Coyle's home. Deputy Marsh exited his vehicle and walked around to the back of Coyle's property. Deputy Marsh heard the report that Posey had been sighted and fled on an ATV. He also heard Corporal Haughee advise that Posey was seen heading back in the direction of Coyle's property. Not knowing where Posey was, Deputy Marsh proceeded into the wooded area, which was outside the perimeter of Coyle's property, and walked down an ATV trail where Posey had last been seen. Deputy Marsh never encountered Posey, nor did he hear an ATV.

[7] Deputy Marsh returned to Coyle's property while keeping an eye out for Posey. As he crossed back into Coyle's back yard, Deputy Marsh conducted a brief search of the perimeter of the yard. He also conducted "a protective sweep" around a shed located near the back of Coyle's yard. *Id*. at 24. As he walked by the shed, Deputy Marsh had to step over what he described as "a tool bag or something[,] it had a zipper and it was wide open." *Id*. at 21. It was still

daylight and Deputy Marsh could see a container of salt and a container of rubbing alcohol inside the bag. On a shelf behind the shed, he observed a Coleman fuel can that had been painted camouflage. From his training and experience, Deputy Marsh knew these items were commonly associated with the manufacture of methamphetamine. Deputy Marsh stopped looking around the perimeter of the property at that point.

[8]     At the front of the house, a U.S. Marshall was talking to Coyle, asking him questions about Posey's whereabouts. Deputy Marsh approached and asked Coyle about the items he observed near the shed. Coyle responded that he knew nothing about them. Deputy Marsh then asked Coyle for permission to search the property and, after conferring with his wife, Coyle said no. Deputy Marsh returned to his police vehicle and started preparing a probable cause affidavit for the purpose of obtaining a search warrant.

[9]     Officer David Biever of the Tell City Police Department reported to Coyle's property at the start of his shift to take over the investigation started by Deputy Marsh. Deputy Marsh advised Officer Biever of the items he discovered near the shed. Officer Biever then completed the probable cause affidavit by adding his credentials and then submitted such to a magistrate. Based on the probable cause affidavit, a search warrant was issued for Coyle's property, including the outside of the residence but within the boundaries of the property as well as the inside of the residence.

[10] Two state troopers conducted the search of Coyle's property. Items located outside included camp fuel, sea salt, coffee filters, blister packs, battery strippings, and a red bottle that had been burned in a fire pit. Inside the house in a "man cave room," the state troopers found an eye glass case with a glass pipe containing residue, burnt foil with residue, a green straw, a fake Pepsi can that had an odor of marijuana, a black digital scale, a black glass pipe, and three prescription medicine bottles containing marijuana seeds. *Id*. at 54.

[11] On September 21, 2015, the State charged Coyle with dealing in methamphetamine, a Level 5 felony; possession of methamphetamine, a Level 6 felony; neglect of a dependent, a Level 5 felony; possession of paraphernalia, a Class C misdemeanor; and maintaining a common nuisance, a Level 6 felony. On February 16, 2016, Coyle filed a motion to suppress evidence collected both outside and inside his home. The trial court held a hearing on the motion to suppress on March 24, 2016, and took the matter under advisement. On May 17, 2016, the trial court entered an ordering denying Coyle's motion to suppress. The trial court thereafter granted Coyle's motion to certify the matter for interlocutory appeal. This court accepted jurisdiction on August 11, 2016. Additional facts will be provided as necessary.

## Discussion & Decision

[12] Our review of a trial court's denial of a motion to suppress evidence is similar to other sufficiency issues. *Litchfield v. State*, 824 N.E.2d 356, 358 (Ind. 2005). We determine whether there was substantial evidence of probative value to support

the trial court's ruling. *Id.* In so doing, we do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* Unlike other sufficiency matters, however, we may also consider uncontested evidence that is favorable to the defendant. *Westmoreland v. State*, 965 N.E.2d 163, 165 (Ind. Ct. App. 2012).

[13] Coyle argues that Deputy Marsh's warrantless search of his property violated his rights under both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Specifically, Coyle argues that Deputy Marsh's entrance onto his property was for the sole purpose of executing an arrest warrant for Posey and that once Deputy Marsh was informed that Posey had fled from Coyle's property, Deputy Marsh had no legal basis to be on his property, let alone justify a search of any part thereof. Coyle maintains that it was Deputy Marsh's illegal search of his property near the shed that produced the incriminating evidence used to provide the probable cause for the search warrant.

[14] The constitutionality of a search is a question of law, which we review de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013). Similarly, determinations of reasonable suspicion and probable cause are reviewed de novo. *Myers v. State*, 839 N.E.2d 1146, 1150 (Ind. 2005). When a defendant challenges a warrantless search, it is the State's burden to prove the search fell within an exception to the warrant requirement. *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013).

### Fourth Amendment

[15] The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the States through the Fourteenth Amendment. *Krise v. State*, 746 N.E.2d 957, 967 (Ind. 2001). The touchstone of the Fourth Amendment is reasonableness. *J.K. v. State*, 8 N.E.3d 222, 229 (Ind. Ct. app. 2014). *See also Terry v. Ohio*, 392 U.S. 1, 19 (1968) ("the central inquiry under the Fourth Amendment [is] the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security"). The reasonableness of a search under the Fourth Amendment turns on whether the subject of the search has an expectation of privacy and if so whether that subjective expectation is reasonable judged by the objective criterion of the views of society as a whole. *Litchfield*, 824 N.E.2d at 358.

[16] A warrantless search or seizure is per se unreasonable, and the State bears the burden to show that one of the well-recognized exceptions to the warrant requirement applies. *Wilkinson v. State*, 70 N.E.3d 392, 402 (Ind. Ct. App. 2017). One exception that allows police to dispense with the warrant requirement is where the "'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-94, (1978); *Holder v. State*, 847 N.E.2d 930, 936-37 (Ind. 2006).

[17] Here, law enforcement had probable cause to believe that Posey could be on Coyle's property after U.S. Marshalls tracked Posey's cell phone to that

location. Armed with valid felony arrest warrants[2] for Posey, the officers entered upon Coyle's property. Coyle does not argue that the officers could not enter his property to execute the arrest warrants. Rather, he argues that once Posey fled from his property, Deputy Marsh had no further justification to be on his property.

[18] Our review of the facts leads us to conclude that the circumstances are not as cut and dried as Coyle suggests with regard to Posey's whereabouts. Here, the circumstances were that several different law enforcement agencies converged on Coyle's property from different directions to execute outstanding felony arrest warrants for Posey, who had evaded police for several weeks. One officer reported seeing Posey in Coyle's back yard and that he fled on an ATV. Shortly thereafter, an officer approaching from the backside of Coyle's property reported seeing Posey headed back in the general direction of Coyle's property.

[19] As the information from other officers was being reported, Deputy Marsh went around the side of Coyle's house to the back of the property and followed an ATV trail in the wooded area just outside the perimeter of Coyle's property. Deputy Marsh did not see Posey and did not hear an ATV. It suffices to say that Deputy Marsh knew Posey was in the area, but did not know his whereabouts. Deputy Marsh testified that based on the report that Posey was

---

[2] Coyle does not dispute the validity of the arrest warrants.

seen heading back toward Coyle's property, he believed Posey could have been hiding somewhere on the property.

[20] Unable to locate Posey in the wooded area, Deputy Marsh headed back to Coyle's property to look for Posey and conducted what he called a "protective sweep"[3] of the perimeter of Coyle's yard. He also briefly looked for Posey around the outside of a shed located near the back perimeter of Coyle's property. Deputy Marsh was not searching for incriminating evidence when he came across the zippered bag that was in plain view next to the shed. The bag was wide open, allowing him to see the contents thereof. From his training and experience, Deputy Marsh associated the items in the bag with manufacturing of methamphetamine. Deputy Marsh did not seize the items at that time, but instead approached Coyle and requested permission to search the property, which Coyle refused to give. Based on his observations of the items in plain view, Deputy Marsh had probable cause to seek the search warrant. Based on the foregoing, we conclude that Deputy Marsh's conduct in scanning the perimeter of the yard and looking around the shed for Posey was constitutionally reasonable and did not violate the Fourth Amendment. *Cf., Scott v. State*, 803 N.E.2d 1231, 1236 (Ind. Ct. App. 2004) (finding no Fourth

---

[3] In Fourth Amendment parlance, a "protective sweep" is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Here, Deputy Marshall was not searching the property incident to an arrest, thus his search was not technically a "protective sweep" in this sense. He did, however, conduct a visual inspection of the property, looking for Posey, who minutes before had been seen in the area.

Amendment violation where officer legitimately conducted a protective sweep during execution of an arrest warrant). The trial court properly denied Coyle's motion to suppress.

## Article 1, Section 11

[21] Article 1, Section 11, like the Fourth Amendment, bars unreasonable searches and seizures. Although the language of Article 1, Section 11 tracks the Fourth Amendment verbatim, our Supreme Court has held that they are "analytically distinct." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Id.* (citing *Moran v. State*, 644 N.E.2d 536, 539 (Ind. 1994)).

[22] When considering the totality of the circumstances, we must consider both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure. *Myers,* 839 N.E.2d at 1153 (citing *Litchfield*, 824 N.E.2d at 360). Although there may well be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: (a) the degree of concern, suspicion, or knowledge that a violation has occurred, (b) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (c) the extent of law enforcement needs. *Id.* (citing *Litchfield*, 824 N.E.2d at 361). The degree of intrusion is evaluated from the defendant's point of view. *Duran v. State*, 930 N.E.2d 10, 18 (Ind. 2010) (citing *Litchfield*, 824 N.E.2d at 360).

[23] In determining whether the police behavior was reasonable under Section 11, we consider each case on its own facts and construe the constitutional provision liberally so as to guarantee the rights of people against unreasonable searches and seizures. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). It is the State's burden to prove that the search was reasonable under the totality of the circumstances. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

[24] The extent of law enforcement needs to enter upon Coyle's property were great. As noted above, the officers entered upon Coyle's property to apprehend a fugitive wanted on outstanding felony arrest warrants who the officers had reason to believe was located there. With regard to the degree of intrusion, there is no doubt that the arrival of numerous officers would interfere with Coyle's use of his property. The officers, however, were there to find Posey. Given that Posey was seen outside of Coyle's home, Deputy Marsh limited his search for Posey to the perimeter of the yard and to an area around a shed located within the perimeter of Coyle's yard. His search was brief and no more of an intrusion than the initial entry onto Coyle's property. Under the circumstances, Deputy Marsh's search during the execution of the arrest warrant was justified and reasonable. *Cf.*, *Scott*, 803 N.E.2d at 1237.

[25] Finally, the officers entered upon Coyle's property only after learning that Posey, a wanted fugitive, might be located there. The incriminating evidence was discovered in plain view as Deputy Marsh was looking for Posey. Considering the totality of the evidence, we conclude that Deputy Marsh's conduct was wholly reasonable and did not violate Article 1, Section 11 of the

Indiana Constitution. The trial court did not err in denying Coyle's motion to suppress.

[26] We affirm.

Kirsch, J. and Mathias, J., concur.