

FILED

Dec 21 2018, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David M. Payne
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shakur Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 21, 2018<br><br>Court of Appeals Case No.<br>27A02-1712-CR-2958<br><br>Appeal from the Grant Superior<br>Court<br><br>The Honorable Jeffrey D. Todd,<br>Judge<br><br>Trial Court Cause No.<br>27D01-1512-MR-1 |

**Friedlander, Senior Judge.**

[1]     Shakur Johnson appeals his conviction of murder, a felony.[1]  We affirm.

---

[1] Ind. Code § 35-42-1-1 (2014).

[2] Johnson presents three issues for our review, which we consolidate and restate as two:

> I. Whether the trial court erred by admitting certain evidence seized pursuant to a search warrant.

> II. Whether the trial court erred by admitting certain statements made by Johnson.

[3] On December 29, 2015, Johnson, age 17, was charged with the murder of Mark Cotton. Information as to Johnson's location was acquired from his cell phone carrier and led police to obtain a search warrant for the apartment of Kylee Weaver, Johnson's girlfriend. During the search, police located Johnson and seized his cell phone and bullet cartridges consistent with those found at the scene. Johnson filed a motion to suppress this evidence, which the trial court denied. At trial, the evidence was admitted over Johnson's objection.

[4] After Johnson was taken into custody, he asked to speak to his probation officer. His probation officer met with him at the juvenile detention center, and, during their conversation, Johnson made incriminating statements. These statements were included in his pretrial motion to suppress. The court denied Johnson's motion as to the statements, and they were admitted at trial over his objection. A jury found Johnson guilty as charged, and he was sentenced to fifty-five years, fifty of which is to be executed. He now appeals.

[5] Both of Johnson's arguments challenge the admission of evidence. The admission of evidence at trial is a matter left to the discretion of the trial court.

*Nicholson v. State*, 963 N.E.2d 1096 (Ind. 2012). We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances, and the error affects a party's substantial rights. *Id.*

[6] Johnson first challenges the admission of the evidence seized from Weaver's apartment. The gist of his argument is that the officers' acquisition of his location by using the cellular tracking information provided by his wireless carrier was improper because no exigent circumstances existed. Therefore, insofar as the cellular tracking information served as the basis for the warrant to search Weaver's apartment, the search violated his federal and state constitutional rights, and any evidence seized in the search should not have been admitted at trial.

[7] The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures by prohibiting, generally, searches and seizures conducted without a warrant supported by probable cause. U.S. CONST. amend. IV; *Clark v. State*, 994 N.E.2d 252 (Ind. 2013). As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible against a defendant absent a recognized exception. *Clark*, 994 N.E.2d 252. Likewise, article I, section 11 of the Indiana Constitution protects citizens from unreasonable searches and seizures. Despite the similarity of the two provisions, Indiana courts interpret and apply article I, section 11 independently from Fourth Amendment analysis. *Mitchell v. State*, 745 N.E.2d 775 (Ind. 2001).

[8]     The basis for the search warrant of Weaver's apartment was the cellular tracking information police obtained from the wireless carrier. Police obtained this information pursuant to Indiana Code section 35-33-5-12(a)(2) (2014), which provides:

> (a) A law enforcement officer or law enforcement agency may not use a real time tracking instrument that is capable of obtaining geolocation information concerning a cellular device connected to a cellular network unless:
>
> > (1) the law enforcement officer or law enforcement agency has obtained an order issued by a court based upon a finding of probable cause to use the tracking instrument; or
> >
> > (2) exigent circumstances exist that necessitate using the tracking instrument without first obtaining a court order.

Thus, for the acquisition of cellular location information, our Legislature has determined that the existence of exigent circumstances creates an exception to the general requirement of a court order.

[9]     Although the Legislature did not define the term "exigent circumstances" with regard to this particular statute, it has been considered by our courts in the search warrant realm, and such examples can be instructive. Exigent circumstances that have been found sufficient to overcome a warrantless entry have included: 1) a suspect is fleeing or likely to take flight in order to avoid arrest; 2) incriminating evidence is in jeopardy of being destroyed or removed unless an immediate arrest is made; and 3) hot pursuit or movable vehicles are

involved. *Snellgrove v. State*, 569 N.E.2d 337 (Ind. 1991). Our Supreme Court has also recognized an "emergency circumstances" exception to the warrant requirement for instances where a violent crime has occurred and entry by police can be justified as a means to prevent further injury or to aid those who have been injured. *Sapen v. State*, 869 N.E.2d 1273, 1277 (Ind. Ct. App. 2007), *trans. denied*. Further, "[a]mong the exigencies that may properly excuse the warrant requirement are threats to the lives and safety of officers and others and the imminent destruction of evidence." *Holder v. State*, 847 N.E.2d 930, 937 (Ind. 2006).

[10] With these concepts in mind, we turn to the facts of this case. On November 12, 2015, Cotton's body was found in the backyard of his residence. A cell phone found on Cotton's body showed an outgoing telephone call to 765-733-4079 while Cotton was believed to still be alive. The phone also contained text communication from that number on the same evening. The communication indicated that the individual using the 765-733-4079 number had texted to Cotton, "Got some smoke, bro make it just a $10 bag bro." Ex. Vol. 6, p. 11. Cotton had responded, "Got you." *Id.* Through an information database, officers learned that this number was registered to Cordelia Jackson, who the police knew from a previous investigation is Johnson's mother. A law enforcement information database also indicated that the number is associated with Johnson. Additionally, in the same area as Cotton's body, a necklace was found which a Facebook search revealed was the same or similar necklace to one worn by Johnson.

[11] Based upon this information, the police submitted a "Wireless 9-1-1 Emergency Information Request Form" to Jackson's/Johnson's wireless carrier. *Id.* at 27. On the form, the police requested "GPS/pings" and indicated that the nature of the emergency situation was a homicide and that there was an "immediate threat to [the] community." *Id.* Following a telephonic probable cause hearing, the police also obtained a search warrant for Johnson's person and his mother's address, where he was thought to be living. However, the cellular location tracking returned a "ping" at another address that the police knew to be that of Johnson's girlfriend, Weaver. Due to this new information, the police engaged in another telephonic probable cause hearing to amend the original search warrant by adding Weaver's apartment as a location to be searched. During the subsequent execution of the search warrant at Weaver's apartment, police seized Johnson's cell phone and bullet cartridges that were consistent with those found at the scene.

[12] At the suppression hearing, the State presented the testimony of Detectives Caudell and Zigler. Detective Zigler testified that in a homicide case there is a threat to the community. He explained, "If someone confronts an armed individual that's recently committed a homicide, I'd be concerned for the safety of that person and the community." Tr. Vol. 2, p. 56. Similarly, at trial Detective Zigler testified that the exigent circumstances in this case consisted of the immediate danger of death or injury to another person, the risk of damage to property, and the safety of the community, especially if the perpetrator was confronted. Tr. Vol. 3, p. 67.

[13]     The police were investigating a murder where the small amount of information available at the time linked Johnson to the victim. We find that the circumstances in this case—a threat to the lives and safety of others and possible destruction of evidence—were sufficiently exigent circumstances under Indiana Code section 35-33-5-12(a)(2) to justify obtaining cellular location information without a court order. Johnson has not shown a violation of his federal or state constitutional rights on this basis; accordingly, the trial court's admission of the evidence seized at Weaver's apartment was not in error.[2]

---

[2] Johnson also claims error with the fact that, in the subsequent application for a court order pursuant to Indiana Code section 35-33-5-12(b), the police included two pieces of information that were obtained after the cellular tracking information was sought and acted upon. While this may be true, it does not affect our analysis because we evaluated only the evidence available at the time the request for location information was submitted. *See McGrath v. State*, 95 N.E.3d 522 (Ind. 2018) (stating that rather than consider post hoc justifications for search, appellate courts evaluate only evidence presented to magistrate issuing warrant).

In addition, Johnson filed a Notice of Additional Authority, citing *Carpenter v. United States*, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018). There, the Supreme Court stated its decision was a narrow one and was not expressing a view on real-time CSLI (cell-site location information). The Court also stated:

> Further, even though the Government will generally need a warrant to access CSLI, case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances. One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. Such exigencies include the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence.

> As a result, if law enforcement is confronted with an urgent situation, such fact-specific threats will likely justify the warrantless collection of CSLI. Lower courts, for instance, have approved warrantless searches related to bomb threats, active shootings, and child abductions. Our decision today does not call into doubt warrantless access to CSLI in such circumstances. While police must get a warrant when collecting CSLI to assist in the mine-run criminal investigation, the rule we set forth does not limit their ability to respond to an ongoing emergency.

*Id.* at 2222-23.

[14] Johnson also claims error with the trial court's admission of statements he made to Lakisha Fisher, his probation officer, the morning after Cotton was murdered. During that conversation, Johnson complained that he was being treated unfairly by the police with regard to the investigation into Cotton's murder and explained that he had met Cotton the previous night in order to purchase Spice[3] from him. He stated, "See this what happened," at which point, Fisher informed him that he did not have to discuss the matter with her, but Johnson interrupted her saying, "[N]ah…nah…it[']s cool, cuz I know I'm telling the truth." Ex. Vol. 6, p. 40. After telling Fisher of his exchange with Cotton, Johnson, "with his head leaned to the side, [in] what appeared to this officer as a gangsta style demeanor," said, "'I served him up.'" *Id.* Fisher reported that in her "knowledge of street slang and growing up in the Detroit metro area, the term 'served up' means 'to punish' to give a person 'what they deserve.'" *Id.* Johnson appeals the admission of these statements on two grounds: 1) the juvenile waiver of rights statute and 2) Indiana Evidence Rule 617.

[15] At the suppression hearing, juvenile probation officer Fisher testified that in 2015 she was Johnson's probation officer. She stated that on the morning following Cotton's murder, the juvenile detention officer called her and

---

[3] Spice is a mix of herbs and manmade chemicals with mind-altering effects. It is often called "synthetic marijuana" or "fake weed" because some of the chemicals in it are similar to ones in marijuana, but its effects are sometimes very different from marijuana and are frequently much stronger. NIDA FOR TEENS, https://teens.drugabuse.gov/drug-facts/spice (last visited December 13, 2018).

informed her that Johnson was asking to speak with her. She explained that she assumed Johnson wanted to talk about his pending probation violations, so she went to speak with him to find out what questions he had. She testified:

> [State:]      Had you had any contact or communication with law enforcement investigating the death of Mark Cotton prior to go[ing] to the detention, uh, center to speak with Shakur Johnson?
>
> [Fisher:]     No.
>
> [State:]     Was it your intention to gather information or learn from Shakur Johnson if he knew anything about the death of Mark Cotton?
>
> [Fisher:]     No.

Tr. Vol. 2, p. 66. Fisher stated that her conversation with Johnson initially concerned his probation violations. She continued:

> [State:]     Did, uh, Shakur Johnson at any time then begin talking about his interaction with the police, and the investigation about Mark Cotton?
>
> [Fisher:]     Yes.
>
> [State:]     Did you say or do anything to change the topic of conversation to a Marion Police Department investigation or the death of Mark Cotton?
>
> [Fisher:]     I didn't say anything to change to, toward that conversation, no.

[State:] Was that the Defendant himself that began talking about that?

[Fisher:] Yes, that's correct.

[State:] Did he initiate that topic?

[Fisher:] Yes, he did.

[State:] And as he did, did you ask him any questions?

[Fisher:] No, I did not ask any questions.

[State:] Did you at any point advise him that he did not need to be speaking to you about that topic?

[Fisher:] Yes, yes I did.

[State:] And when you did, how did the Defendant respond?

[Fisher:] Um, he said, '[N]ah, nah, I'm gonna tell you, uh, I wanna tell my side of the story' something to that nature.

[State:] You did not read Miranda or advise him of rights. Is that correct?

[Fisher:] No.

[State:] This was not a situation where you [were] intending to question him about delinquent or criminal behavior. Is that right?

[Fisher:]     No.

[State:]     Was this, uh, Ms. Fisher, an interrogation?

[Fisher:]     No, it was not.

[State:]     Was this even an interview by you where you were trying to gather information from Shakur Johnson?

[Fisher:]     No, it was not an interview. It was just a simple going to see what he want[ed] and allow him to, uh, talk.

*Id.* at 67-68.

[16] Indiana Code section 31-32-5-1 (1997) is the juvenile waiver of rights statute. It provides that any rights guaranteed to a child under the federal or state constitutions or any other law may be waived only:

> (1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;
>
> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>
>> (A) that person knowingly and voluntarily waives the right;
>>
>> (B) that person has no interest adverse to the child;
>>
>> (C) meaningful consultation has occurred between that person and the child; and

> (D) the child knowingly and voluntarily joins with the waiver; or

> (3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:

>> (A) the child knowingly and voluntarily consents to the waiver; and

>> (B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.

*Id.* Generally, the juvenile rights waiver statute and the safeguards of the *Miranda* warnings attach only where a subject is both in custody and subject to interrogation by police. *S.G. v. State*, 956 N.E.2d 668 (Ind. Ct. App. 2011), *trans. denied*.

[17] Here, Johnson was in custody and made statements to his probation officer, whom he now claims was "working in cooperation with the police." Appellant's Br. p. 36. Accordingly, the threshold questions in this case are whether Fisher was an agent of the police and whether she interrogated Johnson.

[18] "There must be some evidence of an agency relationship before we can find one." *D.Z. v. State*, 100 N.E.3d 246, 248 (Ind. 2018) (in ultimate determination of whether juvenile was under custodial interrogation, court analyzed whether assistant principal was agent of police when he talked with juvenile). Here, no

evidence suggests the police directed or encouraged Fisher to act on their behalf or that she was acting on any police request to ask certain questions or in any way influence the subject matter of her conversation with Johnson. Quite the opposite; Johnson requested to speak with Fisher. Indeed, Fisher testified that her conversation with Johnson occurred because he requested to speak with her. It was not an interrogation—she asked him no questions—and that, in speaking with him, she had no intention of gathering information on the murder investigation. She further testified that Johnson initiated the change in topic from his probation violations to the murder investigation. She advised him that he did not need to speak to her about the subject, and he indicated his desire to do so.

[19] We observe also that, in denying the suppression of these statements, the trial court stated, "Ms. Fisher is not a law enforcement officer. Unlike law enforcement, she is a probation officer who serves at the pleasure of the courts that appointed her. . . . Courts are not engaged in law enforcement; therefore, its employees are also not engaged in enforcing the law." Appellant's App. Vol. 2, p. 95. The court cited Indiana Code section 11-13-1-1 (2003) which sets forth the appointment, qualifications, responsibilities, and salary of probation officers and states that probation officers "shall serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court." Ind. Code § 11-13-1-1(c).

[20] We turn next to whether Fisher's conversation with Johnson was an interrogation. "Interrogation has been defined as a process of questioning by

law enforcement officials which lends itself to obtaining incriminating statements." *S.G.*, 956 N.E.2d at 675. The process includes express questioning and words or actions on the part of the police that they know are reasonably likely to elicit an incriminating response from the suspect. *Id.*

[21] There is no evidence of any questioning by Fisher, much less questioning intended to elicit an incriminating response. Johnson requested to speak with Fisher and changed the topic of conversation from his probation violations to Cotton's murder. Fisher asked Johnson no questions; instead, Johnson volunteered the information even after Fisher advised him of his prerogative not to talk about the investigation. We conclude Fisher was not acting as an agent for the police, and she did not subject Johnson to an interrogation. Thus, neither the juvenile rights waiver statute nor the *Miranda* warnings were triggered.

[22] Finally, Evidence Rule 617 requires that statements made during custodial interrogations conducted in a place of detention in felony criminal prosecutions shall not be admitted against the defendant unless they have been recorded. For reasons previously stated, Johnson's conversation with Fisher was not an interrogation, and, thus, admission of Johnson's statements at trial do not run afoul of Rule 617.

[23] For the foregoing reasons, we conclude the trial court did not abuse its discretion by admitting the evidence seized at Weaver's apartment or by admitting Johnson's statements to his probation officer.

Judgment affirmed.

Riley, J., and Kirsch, J., concur.