

FILED

Nov 03 2025, 8:52 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Court of Appeals of Indiana

Parnell D. Lanier,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

November 3, 2025

Court of Appeals Case No.
25A-CR-769

Interlocutory Appeal from the Marion Superior Court

The Honorable Marshelle D. Broadwell, Judge
The Honorable Joel A. Schneider, Magistrate

Trial Court Cause No.
49D07-2405-F5-12646

---

**Opinion by Judge Bradford**
Judges Kenworthy and Felix conur.

**Bradford, Judge.**

# Case Summary

[1] Following a traffic stop, during which law enforcement discovered contraband, Parnell Dion Lanier was charged with Level 5 felony unlawful carrying of a handgun, Level 5 felony possession of cocaine, and Class A misdemeanor possession of marijuana. Lanier moved to suppress certain evidence, namely the contraband that had been recovered from his person and his vehicle during the traffic stop. The trial court denied Lanier's motion to suppress and, at Lanier's request, certified the case for interlocutory appeal.

[2] Lanier contends that the trial court erred in denying his motion to suppress the challenged evidence, arguing that the evidence should have been suppressed because the initial traffic stop was unlawful. For its part, the State argues that the traffic stop was lawful and the search was reasonable. We affirm.

# Facts and Procedural History[1]

[3] According to the probable cause affidavit and testimony presented during the hearing on Lanier's motion to dismiss, on the evening of May 4, 2024,

---

[1] We held oral argument in this matter at Westfield High School on October 17, 2025. We wish to thank the students, faculty, administration, and staff of Westfield High School for their warm hospitality. We also commend counsel for the high quality of their arguments.

Indianapolis Metropolitan Police Officer Collin Poynter[2] was on routine patrol when he observed a vehicle, which was being driven by Lanier, fail "to signal as [it] was turning to go eastbound on 30th Street … from a Phillips 66 parking lot." Tr. Vol. II p. 5. Officer Poynter knew the area to be "a heavy traffic area" and "one of the more violent areas. There's a lot of property crimes, crimes against people in that area, specifically, and there's a lot of crimes against the business." Tr. Vol. II p. 5.

[4] After observing Lanier's failure to use a turn signal, Officer Poynter initiated a traffic stop. As he approached Lanier's vehicle, Officer Poynter "could smell the odor of marijuana." Tr. Vol. II p. 8. Officer Poynter observed "a holstered SCCY 9mm handgun" in Lanier's lap. Appellant's App. Vol. II p. 20. Officer Poynter removed Lanier "from the vehicle and detained him due to his ignoring commands not to reach for the firearm." Appellant's App. Vol. II p. 20. Lanier acknowledges that contraband was recovered from his person and vehicle.

[5] On May 6, 2024, the State charged Lanier with Level 5 felony unlawful carrying of a handgun and Class A misdemeanor possession of marijuana. The State later amended the charging information to include a charge of Level 5 felony possession of cocaine. Lanier moved to suppress "certain evidence, including contraband, seized from [his person] or his vehicle[.]" Appellant's

---

[2] It appears that Officer Poynter's name is misspelled in the transcript. The transcript lists his last name as Bynter, but the probable cause affidavit authored by this officer spells his last name as Poynter. The parties also referred to the officer as Officer Poynter at oral argument.

App. Vol. II p. 61.  Following a hearing, the trial court denied Lanier's motion, finding that the traffic stop had been "justifiable and reasonable."  Appellant's App. Vol. II p. 89.  The trial court certified the issue for interlocutory appeal, and we accepted jurisdiction.

# Discussion and Decision

## I.  Standard of Review and Relevant Authorities

[6] Our standard of review on appeal from the denial of a motion to suppress evidence is similar to other sufficiency issues.  *Johnson v. State*, 21 N.E.3d 841, 843 (Ind. Ct. App. 2014), *trans. denied*.

> We determine whether substantial evidence of probative value exists to support the court's denial of the motion.  [*Westmoreland v. State*, 965 N.E.2d 163, 165 (Ind. Ct. App. 2012)].  We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling.  *Taylor v. State*, 689 N.E.2d 699, 702 (Ind. 1997).  However, unlike other sufficiency matters, we must also consider the uncontested evidence that is favorable to the defendant.  *Westmoreland*, 965 N.E.2d at 165.

*Id.*  "We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous."  *Westmoreland*, 965 N.E.2d at 165 (citing *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008)).

[7] > A traffic stop is a "seizure" subject to the constraints imposed by both the Indiana and Federal Constitutions.  One exception to the warrant requirement for a seizure is an investigatory stop

based on reasonable suspicion. *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999); *Terry v. Ohio*, [392 U.S. 1, 30–31] (1968). "Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Baldwin*, 715 N.E.2d at 337.

*Campos*, 885 N.E.2d at 597.

[8] Prior to January 1, 2023, Indiana Code section 9-21-8-25 read, in relevant part, that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." As Lanier acknowledges, Indiana Code section 9-21-8-25 did not include any limitation of where or when use of a turn signal was required. It is undisputed, however, that Indiana Code section 9-21-8-25 was repealed effective January 1, 2023.

[9] Also relating to the use of turn signals, Indiana Code section 9-21-8-24 provides as follows:

> (a) A person may not:
>     (1) slow down or stop a vehicle;
>     (2) turn a vehicle from a direct course upon a highway; or
>     (3) change from one (1) traffic lane to another; unless the movement can be made with reasonable safety.
> (b) Before making a movement described in this section, a person shall provide notice of the person's intention by giving:
>     (1) a clearly audible horn signal if any pedestrian may be affected by the movement; and
>     (2) an appropriate stop or turn signal[.]

Prior to January 1, 2023, Indiana Code section 9-21-8-24 only required the use of a turn signal if any other vehicle might be affected by the movement. The fact that the requirement that another vehicle be affected by the movement was removed from the statute, effective January 1, 2023, indicates that the Indiana General Assembly intended that use of a turn signal be required in all qualifying situations, not only when the movement may affect others.

[10] Citing to these statutes, Lanier asserts that since the repeal of Indiana Code section 9-21-8-25, a driver turning onto a public roadway from a private roadway or driveway is no longer required to use a turn signal.[3] Relying on his assertion that he was not required to use a turn signal when turning onto 30th Street from the Phillips 66 parking lot, Lanier contends that the traffic stop was unlawful and, as such, the search of his person and vehicle was impermissible under both the Fourth Amendment to the United States Constitution ("the Fourth Amendment") and Article 1, Section 11, of the Indiana Constitution ("Article 1, Section 11").

[11] The Fourth Amendment, which protects individuals against unreasonable searches and seizures of persons and property, provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

---

[3] Lanier also cites to Indiana Code section 9-21-8-34. We note however, that Indiana Code section 9-21-8-34, which provides that "[a] person who drives a vehicle that is about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on the highway[,]" concerns the right-of-way when entering or crossing a highway, not the use of turn signals.

probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the persons
or things to be seized.

"As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible against a defendant absent a recognized exception." *Johnson v. State*, 117 N.E.3d 581, 583 (Ind. Ct. App. 2018), *trans. denied*. "Likewise, [Article 1, Section 11,] protects citizens from unreasonable searches and seizures." *Id.* Although the language of Article 1, Section 11, tracks the Fourth Amendment verbatim,

> Indiana has explicitly rejected the expectation of privacy as a test
> of the reasonableness of a search or seizure. The legality of a
> governmental search under the Indiana Constitution turns on …
> 1) the degree of concern, suspicion, or knowledge that a violation
> has occurred, 2) the degree of intrusion the method of the search
> or seizure imposes on the citizen's ordinary activities, and 3) the
> extent of law enforcement needs.

*Litchfield v. State*, 824 N.E.2d 356, 359–61 (Ind. 2005). Thus, "[d]espite the similarity of the two provisions, Indiana courts interpret and apply [A]rticle 1, [S]ection 11 independently from Fourth Amendment analysis." *Johnson*, 117 N.E.3d at 583 (citing *Mitchell v. State*, 745 N.E.2d 775 (Ind. 2001)).

## II. The Fourth Amendment

Lanier argues that, under the Fourth Amendment, Officer Poynter lacked probable cause to initiate the traffic stop. "Probable cause to search a vehicle is established if, under the '*totality of the circumstances*' there is a 'fair probability'

that the car contains contraband or evidence." *U.S. v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir. 1993) (quoting *Ill. v. Gates*, 462 U.S. 213, 238 (1983)) (emphasis in original). Furthermore, in *Heien v. North Carolina*, 574 U.S. 54, 57 (2014), the United States Supreme Court held that a police officer's reasonable mistake of law can give rise to the reasonable suspicion necessary to uphold a traffic stop under the Fourth Amendment. The Court noted that it had "repeatedly" affirmed that "'the ultimate touchstone of the Fourth Amendment is 'reasonableness.''" *Heien*, 574 U.S. at 60 (quoting *Riley v. Cal.*, 573 U.S. 373, 381 (2014)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Id.* at 60–61 (quoting *Brinegar v. U.S.*, 338 U.S. 160, 176 (1949)).

> We have recognized that searches and seizures based on mistakes of fact can be reasonable.… But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: The facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Id.* at 61.

[13]   Lanier argues that "[i]t is clear that Officer Poynter sought to enforce a non-existent law … of which he was unaware had been totally repealed." Appellant's Br. p. 13. In making this argument, Lanier alludes to Indiana Code section 9-21-8-25, which again had been repealed effective January 1, 2023. Lanier asserts that "Officer Poynter's testimony shows that he was, in reality, enforcing a law that no longer exists. Doing so was not a 'reasonable mistake' under *Heien*, and the evidence discovered as a result of the unlawful stop must be suppressed." Appellant's Br. pp. 13–14. In his reply brief, Lanier asserts that

> Officer Poynter mistakenly believed this turn signal statute had recently been 'updated' and apparently was unaware that it had been repealed – not updated. The reality is that Officer Poynter stopped [Lanier] for violation of a law that no longer existed and the [State] is making an effort to justify the stop based on a statute that has no application here.

Appellant's Reply Br. p. 5. Lanier claims that "the repeal of the turn signal law statute is so obvious that an objectively reasonable police officer would have realized that relying on the repealed statute would not be in objective good faith and even amounts to inexcusable lack of knowledge." Appellant's Reply Br. p. 8. The State does not make any argument relating to Indiana Code section 9-21-8-25, instead focusing its argument on the reasonableness of the stop under Indiana Code section 9-21-8-24.

[14]   The parties focus their arguments relating to Indiana Code section 9-21-8-24 to subsection (a)(2), which provides that "[a] person may not … turn a vehicle

from a direct course upon a highway" without using a turn signal to inform others of the intended turn. Lanier reads Indiana Code section 9-21-8-24(a)(2) narrowly, arguing that the phrase "upon a highway" indicates that the vehicle in question was already on the public highway and would not include a vehicle turning onto the public highway from a private drive. For its part, the State reads Indiana Code section 9-21-8-24(a)(2) more broadly, arguing that the phrase "upon a highway" includes movement taking a driver *on-to* the highway. While Lanier and the State both argue that their interpretation is the correct interpretation that should be applied to Lanier's case, we find support for both interpretations in Webster's Third New International Dictionary (Unabridged), which includes the following definitions for the word "upon": "in or into close proximity or contact with by way of" and "on the surface … on it[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2517, 2518 (Phillip Babcock Gove et al. eds., G. & C. Merriam Company 1966). We need not choose between the parties' differing interpretations of the meaning of the phrase "upon a highway," however, because even assuming that Lanier's more limited interpretation was the interpretation intended by the Indiana General Assembly at the time the statute was written, we conclude that Officer Poynter's alleged mistake of the law was reasonable under the Fourth Amendment.

[15] Indiana Code section 9-21-8-24(a)(3) requires use of a signal if a person intends to "change from one (1) traffic lane to another; unless the movement can be made with reasonable safety." Indiana Code section 9-21-8-24(a)(3) does not

contain the limiting phrase "upon a highway" that is present in Indiana Code section 9-21-8-24(a)(2). Pointing to Indiana Code section 9-21-8-24(a)(3), the State argues that the term "'traffic lane' is not defined in the traffic laws, and it would have been a reasonable belief that the lane of exit and entry of a busy business like a gas station would constitute a 'traffic lane[.]'" Appellee's Br. p. 8. The State further asserts that

> [i]t would not be unreasonable to believe that turning onto a roadway from [a mall, gas station, retail store, etc.] would constitute a change of travel from one lane to another. In other words, when a person leaves a private business to turn onto a roadway, they are changing lanes and changing their direct course upon a highway. Officer Poynter had a reasonable belief that one of these two movements, which require signaling, occurred, and because Lanier did not signal, Officer Poynter reasonably believed an infraction had occurred.

Appellee's Br. pp. 8–9. The State claims while Lanier's interpretation of Indiana Code section 9-21-8-24 "could surely be a reasonable interpretation of how the statute applies, but it is just as reasonable as the belief that the statute sweeps more broadly and applied to Lanier's conduct in this case, as Officer Poynter reasonably believed." Appellee's Br. pp. 9–10.

[16] We conclude that to the extent that Officer Poynter may have relied on a mistake of law when he initiated the traffic stop, any mistake of the law was reasonable under *Heien*. Again, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's

protection.'" *Heien*, 574 U.S. at 60–61 (quoting *Brinegar*, 338 U.S. at 176). Further, while judges and attorneys interpret the words and phrases contained in a criminal statute to determine the statute's intended meaning, police officers are neither trained nor required to consider all possible interpretations but must rely on a common-sense understanding of the law before making an on-the-spot determination as to what conduct is prohibited. Where, as here, multiple meanings of a particular word or phrase in a statute are possible, when reviewing police action, the question must be whether the officer's on-the-spot determination was reasonable. Because Officer Poynter could have reasonably believed that Lanier's conduct was prohibited by Indiana Code section 9-21-8-24, through either subsection (a)(2), (a)(3), or both, any mistake in the law was reasonable. The traffic stop, therefore, did not violate the Fourth Amendment.

## III. Article 1, Section 11

[17]    Lanier also argues that the search was unlawful under Article 1, Section 11. When considering whether a search is lawful under Article 1, Section 11, we consider "each case on its own facts to decide whether the police behavior was reasonable." *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). Again, in *Litchfield*, the Indiana Supreme Court recognized that while "there may well be other relevant considerations under the circumstances," the reasonableness of a search turns "on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." 824 N.E.2d at 361.

[18]     Lanier cites this court's opinion in *Mercado v. State*, 200 N.E.3d 463, 471 (Ind. Ct. App. 2022), *trans. denied*, which indicates that a mistake of law may be treated differently with regards to Article 1, Section 11, than under the Fourth Amendment. Although ultimately denying Mercado the requested relief, we agreed that "if [the police officer had] misunderstood what the law proscribed when he initiated the traffic stop, Article 1, Section 11, which provides greater rights to Hoosiers here than the Fourth Amendment does, would be available to afford Mercado relief." *Mercado*, 200 N.E.3d at 471. We disagree, however, with the *Mercado* majority's conclusion that a mistake of law can never be reasonable under Article 1, Section 11. As the *Mercado* concurrence provides,

> [t]he inescapable corollary to protection from unreasonable police activity, of course, is that there is no protection from reasonable police activity. If you also accept the proposition … that "reasonable men make mistakes of law, too," [*Heien*, 574 U.S. at 61], then … you are constrained to conclude that Article 1, Section 11, offers no protection from them.

*Id.* at 475. We agree that

> [t]here is, however, nothing in either the text of Article 1, Section 11, or in the jurisprudence of the Indiana Supreme Court that provides any support for the proposition that a reasonable mistake of law should be treated differently than any other reasonable police activity, *i.e.*, activity from which Article 1, Section 11, offers no protection.

*Id.* We further agree that "a blanket ban on evidence recovered as a result of a reasonable mistake of law goes against the letter and spirit of Article 1, Section

11" and the reasonableness of an alleged mistake of law should be considered on a case-by-case basis. *Id.* As such, we adopt the analysis of the United States Supreme Court in *Heien* and believe that the question of whether an alleged mistake of law is reasonable under Article 1, Section 11, requires a determination of whether the alleged mistake of the law is reasonable under *Litchfield*.

[19] Again, *Litchfield* requires consideration of "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs" when considering the reasonableness of police action under Article 1, Section 11. *Litchfield* , 824 N.E.2d at 361. Applying the *Litchfield* factors, we conclude that Officer Poynter's degree of suspicion was high as he observed what he believed to be a traffic infraction. The traffic stop was also minimally intrusive. *See Ramsey v. State*, 222 N.E.3d 1038, 1048 (Ind. Ct. App. 2023) (noting that "our Indiana Supreme Court has held a traffic stop 'amount[s] to a small intrusion' on a defendant's 'ordinary activities.'" *Marshall v. State*, 117 N.E.3d 1254, 1262 (Ind. 2019)), *trans. denied*. It also furthered law enforcement needs as Officer Poynter believed that Lanier had committed a traffic infraction and was acting in furtherance of his duty to protect the public on Indiana's roadways. *See Marshall*, 117 N.E.3d at 1262 (acknowledging that law enforcement has at least a legitimate, if not compelling, need to enforce traffic-safety laws). Balancing the *Litchfield* factors, we conclude that the traffic stop did not violate Article 1, Section 11.

[20] Moreover, for the reasons stated above, we find that any mistake in the law by Officer Poynter with regard to whether Lanier had been required to use his turn signal was reasonable given the requirement in Indiana Code section 9-21-8-24(a)(2) and (a)(3) that a driver use his turn signal when turning from a direct course upon a highway or changing from one traffic lane to another. Again, effective January 1, 2023, the statute was amended to encompass all qualifying situations, not just those when another driver may be impacted, which could lead one to reasonably infer that the statute applied to situations like the one at issue in this case.

[21] In sum, to the extent that Officer Poynter's belief that he had observed a traffic infraction may have been a mistake of law, we conclude that any mistake of the law by Officer Poynter was reasonable under both the Fourth Amendment and Article 1, Section 11. As such, the traffic stop did not violate either constitutional provision. The trial court, therefore, did not err in denying Lanier's motion to suppress the challenged evidence.

[22] The judgment of the trial court is affirmed.

Kenworthy, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Timothy J. Burns
Abigail H. Kim
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Tyler G. Banks
Supervising Deputy Attorney General

Michelle Hawk Kazmierczak
Deputy Attorney General
Indianapolis, Indiana