

**FILED**

Jun 20 2018, 5:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael A. Campbell
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Zachariah Marshall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 20, 2018

Court of Appeals Case No.
64A05-1710-CR-2368

Appeal from the Porter Superior
Court

The Honorable David L.
Chidester, Judge

Trial Court Cause No. 64D04-
1611-CM-10105

**May, Judge.**

[1] Zachariah Marshall appeals the trial court's denial of his renewed motion to suppress. He argues the traffic stop initiated by Reserve Officer Sean Dolan which led to Marshall's arrest violated Marshall's Fourth Amendment rights under the United States Constitution because Reserve Officer Dolan did not have reasonable suspicion to stop Marshall. We reverse and remand.

# Facts and Procedural History

[2] In the early morning on October 29, 2016, Reserve Officer Dolan initiated a traffic stop of Marshall's vehicle based on Reserve Officer Dolan's observation that Marshall "was going over the posted speed limit." (Tr. Vol. II at 39.) Reserve Officer Dolan explained to Marshall that Reserve Officer Dolan pulled Marshall over for speeding.

[3] Soon thereafter, the stop escalated to an investigation of operating a vehicle while intoxicated. Reserve Officer Dolan's supervisor, Corporal Robert O'Dea, arrived on the scene and arrested Marshall. Reserve Officer Dolan testified he did not write Marshall a citation for speeding because

> Marshall's BMV check came back that he had no priors to speeding and also that Mr. Marshall was also under the investigation for an O.W.I., therefore, I knew that he was going to have plenty of money problems and legal problems ahead of him that were going to be costly and I decided to cut him a break on the citation for speeding.

(*Id.* at 13.)

[4] On November 2, 2016, the State charged Marshall with Class A misdemeanor operating a vehicle while intoxicated, endangering a person;[1] Class C misdemeanor operating a vehicle with an alcohol concentration equivalent to .08 but less than .15;[2] and Class C misdemeanor operating a vehicle while intoxicated.[3] On August 4, 2017, Marshall filed a motion to suppress, alleging the traffic stop was unlawful. The trial court denied Marshall's motion on August 8, 2017.

[5] On August 9, 2017, Marshall filed a renewed motion to suppress, again alleging the traffic stop was unlawful, and requested a hearing on the motion. The trial court granted Marshall's request for a hearing and held a hearing on Marshall's renewed motion to suppress on August 17, 2017. The trial court denied Marshall's renewed motion to suppress on August 18, 2017.

[6] On September 6, 2017, Marshall filed a motion asking the trial court to certify its denial of his renewed motion to suppress for interlocutory appeal. The trial court granted Marshall's request for certification on September 12, 2017. Our court accepted jurisdiction over Marshall's interlocutory appeal on December 5, 2017.

---

[1] Ind. Code § 9-30-5-2(b).

[2] Ind. Code § 9-30-5-1(a).

[3] Ind. Code § 9-30-5-2(a).

# Discussion and Decision

[7]     Our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Jackson v. State*, 785 N.E.2d 615, 618 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*. We determine whether substantial evidence of probative value exists to support the denial of the motion. *Id*. We do not reweigh the evidence, and we consider conflicting evidence that is most favorable to the trial court's ruling. *Id*. But the review of a denial of a motion to suppress is different from other sufficiency matters in that we must also consider uncontested evidence that is favorable to the defendant. *Id*. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008).

[8]     The Fourth Amendment to the United States Constitution requires law enforcement officials obtain a valid warrant before conducting searches or seizures. A traffic stop is considered a seizure under the Fourth Amendment. *Bush v. State*, 925 N.E.2d 787, 789 (Ind. Ct. App. 2010), *clarified on reh'g* 929 N.E.2d 897 (Ind. Ct. App. 2010) (clarifying procedural history of case and addressing State's claim of waiver). "To be valid, a traffic stop must be supported by, at least, reasonable suspicion a traffic law has been violated or other criminal activity is afoot." *Id*. at 790. Reasonable suspicion must consist of more than general hunches or suspicions. *Abel v. State*, 773 N.E.2d 276, 279 (Ind. 2002). We consider the totality of the circumstances in determining

whether an officer had reasonable suspicion. *Carter v. State*, 692 N.E.2d 464, 467 (Ind. Ct. App. 1997).

[9]     Marshall argues the trial court erred when it denied his renewed motion to suppress because Reserve Officer Dolan's traffic stop was unlawful. Specifically, Marshall contends Reserve Officer Dolan's testimony of his "visual speed estimate" was insufficient to prove Reserve Officer Dolan had reasonable suspicion to believe Marshall was exceeding the speed limit when Reserve Officer Dolan initiated the traffic stop. (Br. of Appellant at 14.) This is an issue of first impression in Indiana.

[10]    In its order denying Marshall's renewed motion for summary judgment, the trial court concluded that "an officer's testimony of speeding, without radar, pacing or some number, when based upon his or her expertise and ability to draw conclusions about the excessive speed of the vehicle, in general terms, is sufficient to establish a reasonable suspicion of a traffic infraction justifying a stop." (App. Vol. II at 11.) In support of its conclusion, the trial court cited four cases from other jurisdictions: *State v. Butts*, 269 P.3d 862 (Kan. 2012); *State v. Konvalinka*, 819 N.W.2d 426, 2012 WL 1860352 (Iowa Ct. App. 2012); *State v. Allen*, 978 So.2d 254 (Fla. Dist. Ct. App. 2008); and *State v. Barnhill*, 601 S.E.2d 215 (N.C. App. 2004), *review denied*.

[11]    All of the cases cited by the trial court in support of its conclusion are distinguishable from the facts in this case because they included testimony from the officer on the scene of the approximate speed the defendant was traveling

prior to the initiation of the traffic stop. *See Butts*, 269 P.3d at 1076 ("Officer Hopkins first noticed Butts' vehicle traveling at a speed of about 45 miles per hour in a 30-mile-per-hour speed zone. The officer's speed determination was an estimate based upon his observations, training, and experience with radar and speed detection."); *Konvalinka*, at \*1 (Officer "estimated Konvalinka to be travelling at approximately sixty miles per hour. The speed limit in the area was twenty-five miles per hour."); *Allen*, 978 So.2d at 255 (Although officer did not know the exact speed Allen was traveling, "Detective Rylott testified that the area has a speed limit of twenty-five miles per hour and that he had to drive well over fifty miles per hour to catch up to Allen."); and *Barnhill*, 601 S.E.2d at 229 ("In Officer's [sic] Malone's opinion the vehicle was exceeding a safe speed, as he estimated the vehicle to be traveling 40 m.p.h. in a 25 m.p.h. zone.").

[12]     Here, the trial court noted as part of its order the relevant facts regarding Reserve Officer Dolan's testimony:

> Hebron police officer Sean Dolan was patrolling the area around State Road 8 and 500 West on October 19, 2016. He observed Defendant's car speeding and stopped the [D]efendant. Officer Dolan was using a radar, but he could not testify at hearing or at deposition 1) what speed the [D]efendant was traveling and 2) what the radar showed as [D]efendant's speed. He could only state the following:
>
> Q: How certain were you that the defendant was speeding?
>
> A: Very certain, a hundred percent.

(App. Vol. II at 10.)  The facts in this case are more similar to those in *State v. Petzoldt*, 803 N.W.2d 128, 2011 WL 2556961 (Iowa Ct. App. 2011).  In *Petzoldt*, Officer Jay King pulled over Petzoldt because Officer King thought Petzoldt was speeding.  After speaking with Petzoldt, Officer King suspected Petzoldt was intoxicated, administered field sobriety tests, and arrested Petzoldt for operating a vehicle while intoxicated.  *Id*. at *1.  Petzoldt filed a motion to suppress, citing multiple grounds, including "lack of legal cause to stop [Petzoldt's] vehicle."  *Id*.  The trial court denied Petzoldt's motion to suppress based on the legality of his traffic stop.[4]  At his subsequent bench trial, the trial court found Petzoldt guilty as charged and sentenced him accordingly.

[13]  On appeal, Petzoldt argued the traffic stop was not justified by reasonable suspicion because "Officer King had no 'sufficient, specific, articulable facts to substantiate a particularized suspicion to justify making an investigatory stop.'"  *Id*. at 3.  The court stated:

> We believe that with proper foundation, an officer's visual estimation of speed may be sufficient to supply probable cause to stop a vehicle for speeding.  But that is not the case here.
>
> Here, Officer King testified he was playing Solitaire when he observed Petzoldt's pickup truck briefly as it passed in front of his patrol car.  Although he testified he believed the truck was

---

[4] Petzoldt also argued "improper administration of field sobriety tests, lack of grounds to request a preliminary breath test and/or invoke implied consent, violation of Iowa Code section 804.20, not requesting a breath specimen in writing, lack of certification to operate the DataMaster, and improper questioning of [Petzoldt] prior to Miranda warning."  *Id*. at *1.  The trial court denied Petzoldt's motion to suppress on all grounds except his argument regarding the grounds for the preliminary breath test.

travelling at a speed greater than the posted speed limit, Officer King made no estimate as to how fast the truck was travelling or how much over the posted limit he thought the pickup was travelling. The posted speed limit is not even in the record before us. Officer King's visual estimate of speed was not confirmed by any other means of corroboration of the speed, such as radar or pacing. Officer King observed no other traffic infractions or driving anomalies by the pickup. He reached his conclusion based upon "years of experience looking at vehicles and the speeds they are going," something he did every day in his job as a thirty-one-year veteran of the police force. Further, he said that as he attempted to catch up to the pickup, he "could tell that it was still going over the speed limit." Officer King did not charge Petzoldt with speeding. The speed of Petzoldt's truck cannot be discerned from viewing the video taken by Officer King's dashboard-mounted camera.

*Id.* (footnote omitted). As part of its analysis, the court relied on *Allen* and *Barnhill* as instances where the officer's visual estimation was sufficient to supply probable cause to stop a vehicle for speeding.[5] Based thereon, the court concluded:

Officer King's testimony is solely conclusory. Having failed to articulate his observations of the movement of the Petzoldt truck in his testimony, Officer King's opinion lacks any factual foundation. Other than relying on his experience as a police officer, he failed to express any reasons for his belief the truck was speeding.

[5]As noted *infra*, those cases are distinguishable on the basis the officers involved testified to an approximate speed the defendant was traveling and to the speed limit in that area.

*Id.* at *4. Because Officer King had not supplied specific, articulable facts upon which he based his conclusion that Petzoldt was speeding, the court concluded the traffic stop violated Petzoldt's rights under the Fourth Amendment of the United States Constitution and reversed Petzoldt's conviction.

[14] Similar facts exist here. During a pre-trial deposition, Reserve Officer Dolan could not recall the posted speed limit at the location of the traffic stop, but he claimed he knew at the time of the stop what the speed limit was in the area. He testified he "thought maybe it was forty miles an hour[.]" (Tr. Vol. II at 22.) During the suppression hearing, Reserve Officer Dolan indicated he had visited the location of the stop prior to the hearing and that the speed limit was fifty miles per hour. Reserve Officer Dolan testified he did not pace Marshall's vehicle, did not write down the speed at which he observed Marshall traveling prior to the traffic stop, and did not observe Marshall commit additional traffic infractions.

[15] Instead, he agreed when asked, "you're testifying that Mr. Marshall was doing something above [the posted speed limit]?" (*Id.* at 12.) Reserve Officer Dolan also testified his radar was properly calibrated and working at the time and while he did not know the exact speed Marshall was traveling, his radar indicated Marshall was going over the posted speed limit. Because Reserve Officer Dolan could not testify regarding the speed of Marshall's vehicle in more specific terms, we hold he did not have specific articulable facts to support his initiation of a traffic stop, and therefore the traffic stop violated Marshall's Fourth Amendment rights. *See L.W. v. State*, 926 N.E.2d 52, 59 (Ind. Ct. App.

2010) (officer did not have reasonable suspicion to conduct investigatory stop of L.W. and thus the stop violated L.W.'s Fourth Amendment rights), *reh'g denied*.

# Conclusion

[16] The trial court erred when it denied Marshall's renewed motion to suppress because the traffic stop that resulted in Marshall's arrest for driving while intoxicated violated the Fourth Amendment to the United States Constitution.[6] Accordingly, we reverse and remand for proceedings consistent with this opinion.

[17] Reversed and remanded.

Riley, J., and Mathias, J., concur.

---

[6] At trial and on appeal, Marshall also argued the traffic stop violated his rights under Article 1, Section 11 of the Indiana Constitution, which also prohibits unreasonable search and seizure. The trial court's order did not address Marshall's Indiana Constitutional argument. As the Indiana Constitution provides broader protection than the Federal Constitution, *State v. Moore*, 796 N.E.2d 764, 767 (Ind. Ct. App. 2003) ("the Indiana Constitution may prohibit searches which the federal Constitution does not"), *trans. denied*, and we have concluded the traffic stop did not meet the lower protection provided by the Federal Constitution, we need not address any argument regarding the Indiana Constitution.