



FILED

Feb 27 2019, 12:23 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-CR-00464

## Zachariah J. Marshall,
*Appellant (Defendant below),*

—v—

## State of Indiana,
*Appellee (Plaintiff below).*

Argued: October 15, 2018 | Decided: February 27, 2019

Appeal from the Porter Superior Court 4,
No. 64D04-1611-CM-010105
The Honorable David L. Chidester, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 64A05-1710-CR-02368

**Opinion by Justice Goff**

Chief Justice Rush and Justices David, Massa, and Slaughter concur.

**Goff, Justice.**

Zachariah Marshall challenges the propriety of his traffic stop for speeding under both the United States and Indiana Constitutions. He presents us with an interesting question: When a police officer's calibrated radar indicates an oncoming vehicle is speeding, the officer then verifies the radar speed exceeds the posted speed limit, but he ultimately fails to document the excessive speed, is there reasonable suspicion for a traffic stop? We answer yes and affirm the trial court.

# Factual and Procedural History

During the early morning hours of October 29, 2016, as Reserve Officer Sean Dolan patrolled near State Road 8 and 500 West in Hebron, Indiana, in Porter County, he observed a vehicle approaching him through the darkness. That night Officer Dolan drove a marked police car equipped with a radar unit that was mounted on the dashboard, turned on, and properly calibrated. As the vehicle approached him, Officer Dolan heard the radar giving off a high-pitch tone. He later explained that the higher the tone's pitch, the faster the speed. Upon hearing the high pitch, Officer Dolan looked at the radar's target speed, compared it to the 50-miles-per-hour speed limit sign posted just north of him, and saw the oncoming vehicle was traveling faster than the posted speed limit. It was a clear, dry night and Officer Dolan had no trouble seeing his radar unit, the posted speed limit, or the approaching car.

One-hundred-percent sure the oncoming vehicle was speeding, Officer Dolan initiated a traffic stop, intending to cite the driver for speeding only. With the car stopped, Officer Dolan approached and found Zachariah Marshall was the driver. Explaining that he stopped Marshall for speeding, Dolan asked him for his driver's license and vehicle registration. While Officer Dolan ran a warrant and BMV check, his back-up officer (Corporal O'Dea) arrived at the scene and talked with Marshall. Corporal O'Dea smelled alcohol on Marshall and noticed his slowed and slurred speech. With the routine speeding traffic stop now turned into an OWI investigation, Officer Dolan exercised his discretion and decided not

to cite Marshall for speeding, later explaining: "I knew he was going to have plenty of money problems and legal problems ahead of him that were going to be costly and I decided to cut him a break on the citation for speeding." Tr. p. 15. Since Officer Dolan did not issue Marshall a speeding ticket or a written warning, he did not document the speed he clocked Marshall driving.

The State of Indiana eventually charged Marshall with three counts: (1) A-Misdemeanor Operating a Vehicle While Intoxicated, Endangering a Person; (2) C-Misdemeanor Operating a Vehicle with an Alcohol Concentration Equivalent to at least 0.08 but less than 0.15; and (3) C-Misdemeanor Operating a Vehicle While Intoxicated.

Marshall's counsel deposed Officer Dolan on June 15, 2017, nearly eight months after the traffic stop. During that deposition, Officer Dolan could recall neither the posted speed limit near the intersection of Route 8 and 500 West where he pulled over Marshall nor could he remember the radar reading of how fast Marshall was driving that night. Officer Dolan, however, stated that at the time of the traffic stop, he could see the speed limit sign posted on 500 West.

On August 4, 2017, Marshall moved to suppress all evidence from the traffic stop, alleging he'd been illegally seized under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Regarding the Fourth Amendment, Marshall alleged Officer Dolan lacked reasonable suspicion to stop him for speeding that night. And concerning the Indiana Constitution, he alleged the traffic stop proved unreasonable considering the totality of the circumstances. Both arguments hinged upon the point that in his deposition testimony Officer Dolan could not recall how fast Marshall was driving before the traffic stop and could not remember the posted speed limit.

Officer Dolan testified at the suppression hearing, recounting the details surrounding the traffic stop and repeatedly acknowledging that he could not remember the posted speed or the radar speed during his deposition two months earlier. He testified he did not document Marshall's speed that night. He explained he returned to the scene of the

traffic stop between his deposition and the suppression hearing and he could now definitely say the speed limit there is 50 miles per hour. Ultimately, Officer Dolan testified that he knew the posted speed limit the night of the stop and he was one-hundred-percent certain that Marshall was speeding before he stopped him.

The trial court eventually denied Marshall's suppression motion. The court's factual findings included that Officer Dolan "observed Defendant's car speeding and . . . [he] was using a radar." The trial court then concluded:

> Officer Dolan was **sure**, based on his experience and observations at the scene, on a clear night, that defendant approached the road in [question] traveling in excess of the posted speed limit. He was **adamant** that the defendant was traveling too fast. The Court **thus finds** that his stop of the defendant was based upon his observation that a traffic infraction was being committed. **On that basis**, the Court denies the Motion to Suppress.

Appellant's App. Vol. II, pp. 11–12 (emphases added). The trial court certified the order for interlocutory appeal and Marshall appealed.

The Court of Appeals accepted jurisdiction, and then reversed, holding: "Because Reserve Officer Dolan could not testify regarding the speed of Marshall's vehicle in more specific terms . . . he did not have specific articulable facts to support his initiation of a traffic stop, and therefore the traffic stop violated Marshall's Fourth Amendment rights." *Marshall v. State*, 105 N.E.3d 218, 222 (Ind. Ct. App. 2018). The Court of Appeals did not address Marshall's argument for suppression under Article 1, Section 11, explaining that "[a]s the Indiana Constitution provides broader protection than the Federal Constitution . . . and we have concluded the traffic stop did not meet the lower protection provided by the Federal Constitution, we need not address any argument regarding the Indiana Constitution." *Id.* at 222 n.6.

The State petitioned for transfer, which we granted, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Trial courts enjoy broad discretion in decisions to admit or exclude evidence. *Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014). When a trial court denies a motion to suppress evidence, we necessarily review that decision "deferentially, construing conflicting evidence in the light most favorable to the ruling." *Id.* However, we "consider any substantial and uncontested evidence favorable to the defendant." *Id.* We review the trial court's factual findings for clear error, declining invitations to reweigh evidence or judge witness credibility. *Id. See also State v. Keck*, 4 N.E.3d 1180, 1185 (Ind. 2014) (explaining that "when it comes to suppression issues, appellate courts are not in the business of reweighing evidence" because "our trial judges are able to see and hear the witnesses and other evidence first-hand"). If the trial court's decision denying "a defendant's motion to suppress concerns the constitutionality of a search or seizure," then it presents a legal question that we review de novo. *Robinson*, 5 N.E.3d at 365.

## Discussion and Decision

Traffic stops, for even minor violations, fall within the protections of the federal and state constitutions. When a law enforcement officer stops a vehicle for a suspected traffic infraction like speeding, that officer seizes the vehicle's occupants under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution; and that traffic stop must pass constitutional muster. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255–59 (2007)); *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009) (Fourth Amendment); *State v. Quirk*, 842 N.E.2d 334, 339–40 (Ind. 2006) (Article 1, Section 11). Marshall here argues that his traffic stop offended both the state and federal constitutions. Even though the Fourth Amendment and Article 1, Section 11 share parallel language, they part ways in application and

scope. The Indiana Constitution sometimes affords broader protections than its federal counterpart and requires a separate, independent analysis from this Court. *Dycus v. State*, 108 N.E.3d 301, 304 (Ind. 2018). We, therefore, take Marshall's constitutional arguments in turn, analyzing his claim first under the Fourth Amendment, and then under Article 1, Section 11.

# I. The Fourth Amendment

## A. The reasonable-suspicion standard applies to traffic violations generally.

The Fourth Amendment safeguards our persons, our property, and our peace by requiring that law enforcement first have a warrant supported by probable cause before executing searches or seizures. *Robinson*, 5 N.E.3d at 367. This mandate notwithstanding, one exception to the warrant and probable-cause requirements allows police to seize a person without a warrant and on a level of suspicion less than probable cause— that is, the reasonable-suspicion standard for brief investigatory stops. We often call these encounters *Terry* Stops, where an officer may "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Traffic stops typically fall into this *Terry* Stop category, and, therefore, must be based upon reasonable suspicion. *Meredith*, 906 N.E.2d at 869 (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)).

Though admittedly "a 'somewhat abstract' concept," reasonable suspicion is not an illusory standard. *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). The reasonable-suspicion standard guards Fourth Amendment rights alongside the warrant and probable cause requirements. Law enforcement "may not initiate a stop for any conceivable reason[;]" they must have at least reasonable suspicion lawbreaking occurred. *Meredith*, 906 N.E.2d at 869 (citing *Whren*, 517 U.S. at 809–10; *Delaware v. Prouse*, 440 U.S. 648, 653

(1979); *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003)). Nor can police rely on a "mere 'hunch'" simply suggesting a person committed a crime before making a *Terry* Stop, like a traffic stop. *Prado Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). To be sure, "[s]uch a stop 'must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.'" *Robinson*, 5 N.E.3d at 367 (quoting *Armfield v. State*, 918 N.E.2d 316, 319 (Ind. 2009)). Reasonable suspicion requires more than an officer's own subjective belief a person might be violating the law. *See Terry*, 392 U.S. at 21–22. In other words, the stopping officer must be able to articulate some facts that provide a particularized and objective basis for believing a traffic violation occurred. *See Keck*, 4 N.E.3d at 1184. That is reasonable suspicion—the constitutional floor—for a traffic stop.

Marshall argues that Reserve Officer Dolan lacked reasonable suspicion for a traffic stop since he did not document the radar speed, could not recall the posted speed limit in his deposition, and could not articulate Marshall's precise speed at the deposition or the suppression hearing. We disagree because the reasonable-suspicion standard does not become more exacting for speeding violations.

## B. The reasonable-suspicion standard does not change for speeding traffic stops specifically.

Applying the reasonable-suspicion standard to traffic stops, we've previously said that, generally, "[a]n officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred." *Meredith*, 906 N.E.2d at 870. While we abide by our prior statement, this case presents a variation on that jurisprudential theme by addressing what details must survive that on-the-spot evaluation for the traffic stop to hold up under the Fourth Amendment's weight. Marshall presents a more specific question: when an officer stops a driver for speeding, does the reasonable-suspicion standard demand that the officer document the driver's speed?

Marshall argues the answer to this question is yes, largely relying upon *United States v. Sowards*, 690 F.3d 583 (4th Cir. 2012). In that case, the police

officer stopped the defendant based upon only his visual observation that the defendant was driving 75 miles per hour in a 70-miles-per-hour zone. *Id.* at 585. Even though the officer had radar equipment, he did not use it to verify the speed. *Id.* Likewise, the officer did not use pacing to gauge the defendant's speed. *Id.* That officer later testified there was no technique to visually assess whether a car was speeding, and he exclusively relied on his experience patrolling speeders. *Id.* at 585–86.

The Fourth Circuit held the officer's visual estimation of the defendant's speed alone did not provide sufficient suspicion for the traffic stop because it provided no factual foundation for speeding. *Id.* at 594. That court opined that when, based on a visual assessment only, an officer stops a driver for speeding in slight excess of the speed limit, "then additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate." *Id.* at 591. The court explained that "[s]uch additional indicia of reliability need not require great exactions of time and mathematical skill that an officer may not have, but they do require some factual circumstance that supports a reasonable belief that a traffic violation has occurred." *Id.* at 593.

Marshall likens his case to *Sowards* and pushes for a similar result. He believes that had Officer Dolan documented his speed or even remembered how fast he was driving before the stop, then there would be some indicia of reliability here to make the traffic stop reasonable. But we see *Sowards* differently and notice two distinguishing points that limit its applicability here. First and foremost, the *Sowards* court evaluated that traffic stop for probable cause, not reasonable suspicion. *Id.* at 594. As we've said before, probable cause is a more demanding standard compared to reasonable suspicion. *See Renzulli*, 958 N.E.2d at 1146. Second, *Sowards* involved a speeding determination based solely on the officer's visual observation. Radar was not used, unlike here. Even if we did apply *Sowards* to these facts, Officer Dolan's radar indication would constitute sufficient indicia of reliability to support his determination that Marshall was speeding. *See Sowards*, 690 F.3d at 593 (suggesting that radar or pacing would provide sufficient indicia of reliability for a speeding assessment).

*Sowards* aside, Marshall, nevertheless, insists Officer Dolan lacked reasonable suspicion to stop Marshall for speeding because Dolan could not articulate, or even estimate, how fast Marshall was driving that night. Marshall demands a number from Officer Dolan, reasoning that we cannot do a Fourth Amendment reasonable-suspicion analysis without one. In support of that argument, Marshall invites us to establish a bright-line rule requiring that officers document a driver's exact speed in some way—by remembering it, documenting it in a citation, a written warning, or a probable-cause affidavit, or by recording the radar speed via a dashboard camera. We disagree initially with Marshall's premise that the Fourth Amendment's reasonable-suspicion requirement needs a number for a speeding violation to pass constitutional muster. And we then reject Marshall's invitation to establish such a black-and-white rule.

First, we disagree with Marshall's premise that the Fourth Amendment requires that an officer provide a number for how fast a defendant was driving. The reasonable-suspicion standard does not demand such measures. Like probable cause, reasonable suspicion is not readily quantifiable and cannot be "reduced to a neat set of legal rules." *Sokolow*, 490 U.S. at 7 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Rather, the reasonable-suspicion "standard takes into account 'the totality of the circumstances—the whole picture.'" *Prado Navarette*, 572 U.S. at 397 (citation omitted). Reasonable suspicion does not require that an officer know a crime occurred beyond a reasonable doubt or even by a preponderance of the evidence. *See id.* And so, in order to execute a constitutional traffic stop, "officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting'" the driver violated the law. *Heien*, 135 S. Ct. at 536.

Second, we reject Marshall's request for a bright-line rule for similar reasons and because we think such a rule unnecessary. As we just said, reasonable suspicion must be evaluated based on the totality of the circumstances of each particular case. And this individualized test does not lend itself to bright-line, widespread rules. What amounts to reasonable suspicion in one case may not be enough in a different case. What's more, reasonable suspicion is not an exacting standard, and it has not and cannot be reduced to a generic checklist. For speeding violations

in particular, it makes sense that either pacing or radar would naturally provide articulable, particularized objective facts to rouse reasonable suspicion. But this case does not require us to speak in such definitive terms.

### C. Reserve Officer Dolan had reasonable suspicion that Marshall was speeding.

Looking at the totality of these facts—the whole picture—Officer Dolan had reasonable suspicion to stop Marshall for speeding that night, meaning Dolan possessed and provided sufficient articulable facts or particularized, objective facts that Marshall was speeding. He testified at the deposition and the suppression hearing that he was using radar that night. He also testified the radar was mounted in front of him, turned on, and properly calibrated that night. Officer Dolan testified the radar's high-pitch tone first alerted him that Marshall's oncoming vehicle was speeding. He explained he looked down at the radar and compared the radar speed to the posted 50-miles-per-hour speed limit and concluded Marshall was speeding. Officer Dolan testified he was one-hundred-percent sure that Marshall was speeding when he stopped him. All told, Officer Dolan articulated enough facts that gave him a particularized and objective basis for believing Marshall was speeding when he initiated the traffic stop.[1] We, therefore, hold that the traffic stop did not amount to an unconstitutional seizure under the Fourth Amendment.

## II. Article 1, Section 11

The Indiana Constitution's Article 1, Section 11 also protects Hoosiers' persons, property, and peace from unreasonable State intrusion. *Quirk*, 842 N.E.2d at 339–40. To maintain its vigor in guarding citizens from

---

[1] We pause a moment to address Marshall's suggestion that Officer Dolan was not a credible witness. But we can only respond by noting that credibility determinations fall outside our purview in these cases. The trial court's order shows that it found Dolan credible, and we will not disturb that determination. *See supra* p. 4.

unreasonable searches and seizures, we give Article 1, Section 11 "a liberal construction" when applying it. *Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006). Indeed, it is well settled that investigative stops, like traffic stops, receive protections under Article 1, Section 11. *Renzulli*, 958 N.E.2d at 1146. Although "[p]olice officers may stop a vehicle when they observe minor traffic violations[,]" they must do so under Article 1, Section 11's strictures. *Quirk*, 842 N.E.2d at 340 (citation omitted).

When a defendant challenges the propriety of an investigative stop under the Indiana Constitution, the burden falls to the State to "show the police conduct 'was reasonable under the totality of the circumstances.'" *Robinson*, 5 N.E.3d at 368 (quoting *State v. Washington*, 898 N.E.2d 1200, 1205–06 (Ind. 2008)). We decide whether a stop proved reasonable given the totality of the circumstances by applying our three-part *Litchfield* test, whereby we evaluate: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)). Considering these three factors, we conclude Marshall's traffic stop was reasonable.

First, based on the radar unit's indications, Reserve Officer Dolan had a high degree of knowledge that Marshall was speeding. Officer Dolan testified his radar's high-pitched tone alerted him that Marshall was speeding and even explained that a higher pitch indicated a faster speed. Officer Dolan then compared the radar speed to the reflective 50-miles-per-hour speed limit sign posted before him. We find that Officer Dolan acted with a great degree of suspicion and then knowledge that Marshall was driving too fast when he stopped him for speeding.

Second, we find that this initial seizure—a traffic stop for speeding—amounted to a small intrusion on Marshall's ordinary activities. Officer Dolan stopped Marshall at approximately 2:40 a.m. on a road with little-to-no traffic. Upon making the stop, Dolan explained why he stopped Marshall and asked him for his license and registration in order to run a warrant and BMV check—all routine procedures. The stop escalated into

an OWI investigation only when Corporal O'Dea spoke with Marshall and noticed his slowed, slurred speech and smelled alcohol.

Third, we acknowledge that law enforcement has at least a legitimate, if not a compelling, need to enforce traffic-safety laws, including speeding limits. So long as governments set speed limits for public safety, those limits will need to be enforced.

Balancing these three factors, we hold Marshall's traffic stop for speeding did not violate Article 1, Section 11 of the Indiana Constitution. Officer Dolan possessed sufficient knowledge that Marshal was speeding, the initial stop was not intrusive, and law enforcement needs to be able to patrol speeding.

## Conclusion

We hold this traffic stop passes muster under both the United States and Indiana Constitutions. As it relates to the Fourth Amendment, we find there were sufficient articulable facts to give Reserve Officer Dolan reasonable suspicion that Marshall was speeding. And for Article 1, Section 11, we find the traffic stop was reasonable in view of the totality of the circumstances. We, therefore, affirm the trial court's decision denying Marshall's motion to suppress evidence.

Rush, C.J., and David, Massa, and Slaughter, JJ., concur.

ATTORNEY FOR APPELLANT
Michael A. Campbell
Schwerd, Fryman & Torrenga, LLP
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana