

I N T H E

# Court of Appeals of Indiana

Facundo Ramos-Osario,

*Appellant-Defendant*



FILED

Apr 07 2025, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

April 7, 2025

Court of Appeals Case No.
24A-CR-1761

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Senior Judge

Trial Court Cause No.
49D35-2304-CM-11332

**Opinion by Chief Judge Altice**
Judges Vaidik and Scheele concur.

**Altice, Chief Judge.**

## Case Summary

Following a bench trial, Facundo Ramos-Osario was convicted of operating a vehicle with an A.C.E. of .08 or more, a Class C misdemeanor. He presents one issue for review: did the trial court abuse its discretion when it admitted certain evidence from a traffic stop over his repeated objections that the State had not shown that the police had reasonable suspicion for the stop?

We reverse.

## Facts & Procedural History

We begin with facts as presented at the suppression hearing. Officer Welter Solares of the Indianapolis Metropolitan Police Department (IMPD) testified that around 2:00 a.m. on April 21, 2023, he was at an all-night auto shop on Harding Street having just had a tire replaced on his police car. While standing outside talking to the shop's employee, he heard gun fire coming from south of his location. He described that the gunfire drew nearer to the auto shop and sounded "closest" to his location as a black Ford F-150 pickup truck drove past on Harding Street. *Transcript Vol. II* at 5. At that time, there were no other vehicles on the road. Solares also testified that he saw "muzzle flashes" coming from the truck as it passed by but could not tell from which side of the vehicle they were coming. *Id*. at 8. Officer Solares immediately got into his police car

and caught up with the truck, at which point he initiated a "felony" traffic stop.[1] *Id*. at 10.

[4] IMPD Officer Cameron Hester also testified at the suppression hearing. He explained that he was parked in his patrol car just north of the auto shop, and he too heard the gunfire but could not pinpoint from where it came. He then heard Officer Solares state over the police radio "something about a truck being involved" with the gunfire, so he went to assist him with the stop of the truck. *Id*. at 24.

[5] Immediately upon stopping the truck, Officers Solares and Hester pulled the three occupants from the vehicle and placed them in handcuffs. Ramos-Osario was the driver of the truck. Officer Solares testified that he noted an odor of alcoholic beverage coming from Ramos-Osario but made no other observations as he was focused on the firearm investigation. Also noting the odor of alcoholic beverages coming from Ramos-Osario and observing that Ramos-Osario had "glassy eyes," Officer Hester conducted the horizontal gaze nystagmus (HGN) test on Ramos-Osario while Officer Solares searched the inside of the vehicle.[2] *Id*. at 21. Noting that Ramos-Osario exhibited signs of intoxication during the HGN test, Officer Hester then administered a portable

---

[1] Officer Solares testified that at some point during the stop, the occupants of the vehicle were asked why they were out shooting and one of the occupants responded that they "were out having fun." *Id*. at 11.

[2] Ramos-Osario "admitted to drinking 2 beers earlier in the night." *Id*. at 48.

breath test to Ramos-Osario that had a result of 0.121. After being informed of Indiana's implied consent law, Ramos-Osario agreed to a chemical test.[3]

[6] Following the stop, Officer Hester completed a probable cause affidavit in which he noted that "Officer Solares heard approximately five to seven gun shots coming from S. Harding St. right in front of Officer Solares," that Officer Solares observed only one vehicle on the road, and that Officer Solares then initiated a "felony stop" of that vehicle. *Appellant's Appendix Vol. 2* at 15. Officer Hester testified at the suppression hearing that Officer Solares never told him about seeing muzzle flashes, so this fact was not included in the probable cause affidavit. He also testified that he had no personal basis on which he could identify where the gunshots originated.

[7] On April 21, 2023, the State charged Ramos-Osario with two Class C misdemeanors—operating a vehicle with an A.C.E. of .08 or more and operating while intoxicated. On March 18, 2024, Ramos-Osario filed a motion to suppress challenging the constitutionality of the stop under the Fourth Amendment and Article 1, Section 11. Respectively, Ramos-Osario argued that the stop was not supported by reasonable suspicion and was not reasonable under the totality of the circumstances because, according to Ramos-Osario, the stop was based on the sound of gunshots alone. The trial court held a hearing

---

[3] The results of the chemical test showed that Ramos-Osario had a blood alcohol concentration of 0.103 grams per 100 milliliters.

on the motion to suppress on April 3, 2024.[4]  At the suppression hearing, Officers Solares and Hester testified as set out above and the trial court expressly found their respective testimony to be credible.  While acknowledging that cases involving "gunshots are tough," the court found reasonable suspicion to justify the stop based on these facts:  the gunshots were heard in the early morning hours, there were not many cars on the road, and of particular import, Officer Solares saw muzzle flashes coming from the truck.[5]  *Transcript Vol. II* at 29.  The court therefore denied Ramos-Osario's motion to suppress.

[8]    A bench trial was originally set for May 22, 2024.  On that date, the State requested a continuance because Officer Solares, "one of the [State's] essential witnesses," was unable to attend.  *Id*. at 35.  Over Ramos-Osario's objection, the trial court continued the bench trial to July 10, 2024.  On that date, Officer Solares again did not appear for the bench trial, and thus, only Officer Hester testified.[6]  When the State questioned Officer Hester about the stop and what occurred thereafter, Ramos-Osario objected to the admission of any such evidence, arguing that there was "[n]o foundation for the stop," "no reasonable suspicion."  *Id*. at 44.  His first objection was overruled, but he objected to

---

[4] The suppression hearing was held before the late Honorable Ronnie Huerta.

[5]  In summarizing the evidence, the court stated:

> The problem is the muzzle flashes.  Uh, muzzle flashes don't just come from anywhere.  There are not allegations that they're reflecting off of buildings or anything like that.  [Officer Solares] indicated that he saw muzzle flashes coming from that truck.

*Transcript Vol. II* at 30.

[6] The bench trial was held before the Honorable Barbara Crawford.

further questions on the same grounds, and the trial court sustained those objections. Over Ramos-Osario's objection, Officer Hester was permitted to testify that he "backed onto [Officer Solares's] traffic stop" to assist in an "[i]nvestigation of shots fired." *Id*. at 45, 46. Officer Hester was also permitted to testify:

> I heard [Officer Solares] on the radio say he had heard shots which I heard as well from where I was sitting at and they proceeded to say there was a truck going northbound on Harding that believed it was involved, so [Officer Solares] initiated a traffic stop on that vehicle and that is when I assisted him with the high-risk traffic stop.

*Id*. at 47. As the State continued its questioning of Officer Hester about what occurred next, Ramos-Osario objected again, arguing:

> We still don't have reasonable suspicion of the stop. All we have is the sound of gunshots. Nothing more that could've come from anywhere. This is a residential area. There are other cars on the road. There was just no suspicion at all for this stop.

*Id*. at 47-8. The trial court overruled this objection, and the trial continued with Officer Hester testifying that he observed an odor of alcoholic beverage coming from Ramos-Osario, that Ramos-Osario had glassy eyes, and that the result of a portable breath test indicated Ramos-Osario was intoxicated. At the conclusion of the evidence, the trial court found Ramos-Osario guilty as charged. At sentencing, the trial court merged the charges, entered a judgment of conviction for operating a vehicle with an A.C.E. of .08 or more, and sentenced Ramos-

Osario to sixty days, with fifty-two days suspended. Ramos-Osario now appeals.

## Discussion & Decision

[9] Ramos-Osario challenges the trial court's admission of evidence obtained following the stop of the vehicle he was driving. His challenge is predicated on his argument that, based on the evidence presented at trial, there was no reasonable suspicion for the stop of his vehicle and thus, the stop of his vehicle violated the Fourth Amendment and Article 1, Section 11. Because he appeals following a completed bench trial, the suppression issue is no longer viable, and the issue is characterized as a request to review the trial court's decision to admit any challenged evidence. *Casillas v. State*, 190 N.E.3d 1005, 1012 (Ind. Ct. App. 2022), *trans. denied*.

[10] The general admission of evidence at trial is a matter we leave to the discretion of the trial court. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo. *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014) (citing *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013)).

**Fourth Amendment**

[11] The Fourth Amendment permits a law enforcement officer to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Robinson v. State*, 5 N.E.3d 362, 367 (Ind. 2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 255-259 (2007). Thus, to effectuate a constitutional traffic stop, an officer must have reasonable suspicion—that is, "a particularized and objective basis for suspecting" the driver violated the law. *Marshall v. State*, 117 N.E.3d 1254, 1261 (Ind. 2019) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). The reasonable-suspicion "standard takes into account 'the totality of the circumstances—the whole picture.'" *Id.* (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014)).

[12] Pointing out that Officer Solares "did not testify" at the bench trial, Ramos-Osario asserts that "no basis was articulated" for the stop of his vehicle. *Appellant's Brief* at 20. He maintains that without Officer Solares's testimony, there was no evidence that identified the truck he was driving as the source of the gunplay given that Officer Hester testified that he did not know where the gunfire originated. Ramos-Osario therefore argues that reasonable suspicion for the stop was not established because the evidence presented at trial showed only that the police acted on the sound of gunfire in the general area, which

alone is not sufficient to establish reasonable suspicion. *See United States v. Delaney*, 955 F.3d 1077, 1086 (D.C. Cir. 2020) (holding that stop conducted by police after the officers had heard gunfire coming from multiple, unidentified locations in close proximity to defendant's location was not enough to establish reasonable suspicion for the stop); *United States v. Curry*, 937 F.3d 363, 366 (4th Cir. 2019) (noting that district court disallowed a stop for investigative purposes where police heard gunfire coming from the direction of an apartment complex housing "hundreds of families" and then travelled to that area and began stopping numerous pedestrians, including the defendant, who were walking in a public area behind the complex, away from the general vicinity where the officers believed the shots originated).

[13] Citing *Kelly v. State*, 825 N.E.2d 420, 426 (Ind. Ct. App. 2005), the State argues that the trial court was entitled to consider Officer Solares's testimony from the suppression hearing when ruling on Ramos-Osario's objection at trial. And, indeed, the State's argument that there was reasonable suspicion for the stop is based almost entirely on testimony presented during the suppression hearing.

[14] Generally speaking, the denial of a motion to suppress is insufficient to preserve error for appeal. *Washington v. State*, 784 N.E.2d 584, 586 (Ind. Ct. App. 2003). Rather, the defendant must make a contemporaneous objection to the admission of evidence at trial. *Id.* "If the defendant makes such an objection and the foundational evidence is not the same as at the suppression hearing stage, the trial court must determine whether evidence is admissible based upon

the testimony and evidence presented at trial." *Id*.; s*ee also Casillas*, 190 N.E.3d at 1012.

[15] This case presents a unique circumstance. Ramos-Osario is not arguing that his motion to suppress was wrongly decided. Rather, he is challenging the overall sufficiency of the State's foundational evidence offered at trial. In this vein, he does not claim that there is new or fresh evidence that would impact the ruling on his motion to suppress, but rather, that the State's evidence at trial is lacking because Officer Solares—the key witness at the suppression hearing for establishing probable cause for the stop of his vehicle—did not appear at trial to testify.

[16] Notably, the evidence from the motion to suppress hearing was not incorporated into evidence at the bench trial. We also note that the judge presiding over the bench trial was not the same judge who presided over the suppression hearing.[7] Furthermore, the trial judge even sustained several of Ramos-Osario's objections to the lack of foundational evidence relating to the establishment of probable cause for the stop. Only after Officer Hester testified that he had personally heard gunshots and that he assisted Officer Solares with a "high-risk traffic stop" after he heard Officer Solares say over the police radio that he was stopping a vehicle he believed was involved with the gunfire, did

---

[7] In *Kelly*, this court noted that in considering whether testimony from a motion to suppress hearing may be considered at trial, obstacles may arise where the judge who conducts the trial is not the judge who conducted and determined the pre-trial motion to suppress. 825 N.E.2d at 425.

the trial court overrule Ramos-Osario's continued objections based on a lack of reasonable suspicion for the stop and permit Officer Hester to testify about what occurred after the stop, i.e., the evidence pertinent to the OWI charges. *Transcript Vol. II* at 47.

[17] Here, without trial testimony from Officer Solares or incorporation of the evidence from the suppression hearing, the trial court was tasked with deciding the admissibility of the challenged evidence based on the evidence that was presented at trial. This evidence was that Officer Hester personally heard gunfire but did not know where it originated and that he assisted Officer Solares with a traffic stop for an investigation of shots fired. These facts are directly in line with those of *Delaney* and *Curry*, *supra*, wherein it was held that an investigative stop based on the sound of gunfire alone was not based on reasonable suspicion. Without evidence at trial establishing a particularized suspicion for the stop of Ramos-Osario's truck, aside from its proximity to the sound of gunfire, the State did not establish that the stop complied with the requirements of the Fourth Amendment. The trial court therefore abused its discretion in admitting evidence pertaining to the stop and anything that occurred as a result thereof.

### Article 1, Section 11

[18] Although its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently. *State v. Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008). When a defendant raises a Section 11 claim, the State must show the police conduct "was reasonable

under the totality of the circumstances." *Id*. We consider three factors when evaluating reasonableness: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[19] Under the first prong, we evaluate whether there was reasonable suspicion to support the stop of a vehicle using the same standard as under the Fourth Amendment. *See Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008) (holding that "many search and seizure issues [including reasonable suspicion] are resolved in the same manner" under both the federal and Indiana constitutions). That is, an officer has the requisite reasonable suspicion when the totality of the circumstances presented a "particularized and objective" basis to support the officer's belief that some law or ordinance was violated. *Sellmer v. State*, 842 N.E.2d 358, 361 (Ind. 2006).

[20] As we explained above, the State did not present evidence at the bench trial that the stop of Ramos-Osario's truck was based on a particularized suspicion that the gunfire came from his truck. Although Officer Solares testified about his observations during the motion to suppress hearing, such evidence was not presented to the trial court during the bench trial as Officer Solares did not testify. The State presented only the testimony of Officer Hester, who stated that he assisted with a felony traffic stop of Ramos-Osario's truck as part of an investigation into shots fired. The first *Litchfield* factor weighs in favor of Ramos-Osario.

[21] As to the second *Litchfield* factor, as soon as the truck was stopped, the three occupants were immediately removed from the vehicle and placed in handcuffs. This was not akin to a routine traffic stop that was short in duration. *See Paul v. State*, 189 N.E.3d 1146, 1158 (Ind. Ct. App. 2022) (agreeing that traffic stop short in duration did not weigh in favor of defendant in terms of the second *Litchfield* factor), *trans. denied*. The degree of intrusion weighs in favor Ramos-Osario. The third factor—the extent of law enforcement needs—clearly favors the State. It cannot be denied that investigation of shots fired is of utmost priority for law enforcement.

[22] On balance, the *Litchfield* factors weigh in favor of the defendant. We conclude that the totality of the circumstances does not establish that there was a reasonable, particularized suspicion to stop Ramos-Osario's truck. The trial court therefore abused its discretion in admitting evidence of the stop and anything that flowed from it.

[23] Judgment reversed.

Vaidik, J. and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Alexander E. Budzenski
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana